263 N.J. Super. 163 (1993)
622 A.2d 872
HILLSDALE PBA LOCAL 207, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF HILLSDALE, DEFENDANT-APPELLANT. TOWNSHIP OF WASHINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, INC., LOCAL 206, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1993.
Decided March 17, 1993.
*168 Before Judges PETRELLA, LONG and KEEFE.
Raymond R. Wiss argued the cause for appellant Borough of Hillsdale (Wiss & Cooke, attorneys; Mr. Wiss, of counsel, and with Thomas K. Bouregy, Jr., on the brief).
Kenneth G. Poller argued the cause for appellant Township of Washington, and on the brief.
Leon B. Savetsky argued the cause for respondents Hillsdale PBA Local 207 and New Jersey State PBA Local 206 (Loccke & Correia, attorneys; Mr. Savetsky, of counsel and on the brief).
Ruderman & Glickman, attorneys for amici curiae New Jersey Conference of Mayors and Bergen Municipal Coalition (Steven S. Glickman, on the brief on behalf of New Jersey Conference of Mayors; Mark S. Ruderman, on the brief on behalf of Bergen Municipal Coalition).
Gerald L. Dorf, attorney for amicus curiae New Jersey State League of Municipalities (Gerald L. Dorf and Mitchell L. Dorf, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
In these two appeals, which we consolidate for purposes of this opinion, the Borough of Hillsdale (Hillsdale) and the Township of Washington (Washington Township) appeal from orders of the Chancery Division which summarily confirmed the separate opinions and awards of the arbitrators appointed by *169 the Public Employment Relations Commission (PERC).[1] After binding "interest arbitration" to resolve the disputed economic issue of salary increases for the respective police forces, the arbitrators in each of the two contract negotiations chose the last "offers" (actually they were demands) of the respective unions, the Hillsdale PBA Local 207 (Local 207) and the New Jersey State Policemen's Benevolent Association, Inc., Local 206 (Local 206) (the employee representative for the police of Washington Township). Unlike arbitration as normally understood, so-called "interest arbitration"[2] is not consensual arbitration but is mandated by statute in the public sector for impasse disputes between municipal public employers and police and firemen pursuant to N.J.S.A. 34:13A-16, and is essentially restricted to the last final offer (unless all parties otherwise agree).
On appeal, Hillsdale argues that under the applicable standard of review the arbitration award must be vacated because: Local 207 failed to offer adequate proofs to justify an award in its favor; the award is speculative, conjectural, and contrary to the intent of N.J.S.A. 34:13A-1 et seq.; and it was procured by "undue means." Hillsdale contends as a result that a remand is required for a new arbitration hearing before a new arbitrator.
Washington Township argues that the arbitration award affecting it should be vacated because the arbitrator failed to *170 properly apply the factors set forth in N.J.S.A. 34:13A-16g in accordance with applicable law.

I.

The Hillsdale Arbitration
After the expiration of the last collective negotiation agreement[3] between Hillsdale and Local 207, the parties were unable to finalize a new agreement. Local 207 filed a petition with PERC on December 17, 1990 to initiate compulsory interest arbitration. On February 1, 1991, PERC appointed Ernest Weiss as "interest arbitrator" in accordance with N.J.A.C. 19:16-5.6.
No non-economic issues were in dispute and the parties agreed upon a three year contract to cover 1991 through 1993. Informal efforts to resolve the disputed economic issues proved unavailing. At those arbitration sessions conducted in April and May of 1991, the parties offered testimony as well as various exhibits and documents[4] on the unresolved issues of *171 salary increases and the "banking of compensatory time," to allow "time off" to be saved beyond the end of the calendar year.
Hillsdale's last offer[5] would have permitted banking of compensatory time up to eighty hours and given annual salary increases as follows:

 1991-7% increase
 1992-6.5% increase
 1993-6.2% increase

Local 207's last "offer" called for banking of compensatory time up to one hundred hours and semi-annual (or "split year") incremental salary increases (which had the effect of compounding the increases twice a year):

 January 1, 1991 -5% increase
 July 1, 1991 -3% increase
 January 1, 1992 -4% increase
 July 1, 1992 -4% increase
 January 1, 1993 -3% increase
 July 1, 1993 -4% increase

In its post-hearing brief Local 207 emphasized to the arbitrator: the similarity between communities in Bergen County; the increases in arrests, juvenile offenses and motor vehicle offenses within the borough; that its comparability analysis of salary and non-wage benefits in "similar communities" showed that Local 207's last "offer," if accepted, would still be less than the Bergen County average in cost of implementation and the negotiated or awarded wage resolution for contracts covering 1991 to 1993; that awards both before and after changes in the Cap Law[6] were on average higher than the increase it *172 sought; and that even in the Pascack Valley group of municipalities (of which Hillsdale is a part) used as a reference for comparability by the borough, Local 207's last offer position would still be below average. Local 207 also argued: Hillsdale's financial analysis was flawed; the borough's offer would result in a downward movement in salary increases which was not justified by any substantial or overriding reason; Hillsdale had the ability to pay (reinforced by expert testimony of Dr. Robert Werner, Ph.D.); and the trend within Bergen County supported Local 207's position.
Hillsdale stressed the failure of Local 207's presentation to consider most of the statutory criteria. It argued that Local 207 had not given reasons why its grouping of Bergen County municipalities was more comparable than the Pascack Valley municipalities; and the interest and welfare of the municipality and its citizens were furthered best by the borough's offer. Hillsdale also argued that a comparison of its last salary offer (when considered with the benefits and indirect compensation already provided) with other Pascack Valley communities demonstrated that Hillsdale police are well compensated; its offer to Local 207 was comparable to (but still higher than) salary increases given to other public employees in the municipality; the borough has a high tax rate but a low assessed valuation per capita, and is highly dependent on residential property taxes (with little vacant land remaining for new development); the consumer price index had increased 46.2% over the last nine years, while Hillsdale police salaries have increased by almost 66%; and the Hillsdale police enjoyed very stabile, secure employment, especially when compared to other types of employment.
After quoting the statute and restating the parties' respective last offers and positions, the arbitrator gave the following *173 reasons for selecting Local 207's position in his October 30, 1991 written opinion and award:
Initially it should be noted that the statutory criteria usually dissolves [sic] into a determination of the more reasonable offer. Rarely is a determination reached under any single criteria [sic] which proves dispositive of the issue in and of itself. In this case the expert testimony established to my satisfaction the Borough's ability to pay. Dr. Werner's credentials were impressive and his testimony was convincing. Undoubtedly any award of wages will have an impact on the Borough but no substantially detrimental result was proven by the Borough.
Analyzing the numerous exhibits, particularly those relating to comparability  whether narrow and limited to "The Pascack Ten" or viewed county-wide, leads me to the inevitable conclusion that the increases sought by the PBA are reasonable. The only issue remaining is whether it is the more reasonable of the two.
The Association has met that burden also  i.e., proving that its offer is more reasonable. A review of the comparables shows that the Association's request is modest. Although one can certainly question the level of increase in light of the current economic times, nevertheless, this is the neighborhood out there. Clearly the PBA's offer is midstream.... Had circumstances been demonstrated that would have created financial difficulties, or operational problems or any difficulty created or worsened by the award of the PBA Last Offer, then Hillsdale's offer may well have been deemed the more reasonable.
Finally, with respect to the disputed grouping comparison for comparing police salaries, the arbitrator found the county-wide group appropriate because "the bulk of the Towns [in Bergen County] are comparable and little distinction exists as to the nature of the police work."
Hillsdale's resistance to the implementation of the arbitrator's award led Local 207 to seek confirmation of the award in the Chancery Division. Hillsdale counterclaimed seeking to vacate that award. In confirming the arbitration award, the Chancery Division judge opined that "the arbitrator here performed precisely those functions entrusted to an arbitrator and consigned to arbitration by the Legislature."

II.

The Washington Township Arbitration
The last collective negotiation agreement between Washington Township and Local 206, which expired on December 31, *174 1990, covered twenty police officers. It provided for a maximum yearly salary of $40,069 for basic patrolmen. Two negotiating sessions (on December 14, 1990 and February 12, 1991) failed to produce a new agreement. As a result of this inability to agree on a new contract, Local 206 filed a petition for compulsory interest arbitration with PERC on March 5, 1991.
Thereafter, PERC appointed Barbara Zausner Tener as "interest arbitrator." Some matters were resolved at meetings of the parties and the arbitrator. Nevertheless, a complete settlement was not achieved and a formal interest arbitration commenced. Two additional meetings resulted in some minor issues being resolved.
Washington Township's last offer[7] on the disputed salary issue was:
Effective July 1, 1991, a 9% increase;
Effective July 1, 1992, a 6% increase;
Effective January 1, 1993, a 6% increase.
Local 206's last "offer" was:
Effective July 1, 1991, a 9% increase;
Effective January 1, 1992, a 4% increase;
Effective July 1, 1992, a 4% increase;
Effective January 1, 1993, a 3% increase;
Effective July 1, 1993, a 4% increase.
Local 206 also submitted four non-economic proposals, described as:
(1) payroll procedure: to make payroll checks available to police employees after the close of banking hours on the work day immediately preceding the regular pay day;
(2) police services: a procedure to govern distribution of off duty police work within the Township;[[8]]

*175 (3) maternity leave: to allow female officers an unpaid leave of up to 12 months during pregnancy without loss of seniority or benefits;[[9]]
(4) cardiac disability: to require that a cardiac disability suffered by a police officer be considered as a work related condition.
In its post-hearing brief, Washington Township stressed its status as a small, residential, suburban community, with a population of approximately 9,000 people and a low crime rate. It argued to the arbitrator (as it does here) that the proper reference communities for any comparison of police contracts should be the neighboring towns of the Pascack Valley region of northern Bergen County, rather than larger and more populous municipalities such as Hackensack, Paramus, Englewood and Clifton. It also pointed to the sagging economy in the Northeast, and especially New Jersey; that other municipal employees (both union and non-union) received an annual salary increase of 4.5%; the 4.5% limit on spending increases due to the Cap Law; the effect of the interest arbitration statute has been to "skew[] contract results in favor of police departments" due especially to the quest for comparability; the fact that split year increases are unique to police contracts; and the non-cash pay benefits enjoyed by Washington Township police officers. The township also challenged Local 206's accounting expert's opinions concerning Washington Township's ability to pay, and opposed all of its non-economic proposals.
Local 206 argued that: traffic, assists to other police departments, and community relations activities keep Washington Township police busy; Washington Township police's average annual salary of $40,069 is less than the average of $43,333 in its select group of Bergen County municipalities; the holiday and personal day benefits of Washington Township are below the average of other Bergen County municipalities; and the 1990 average salary of the Washington Township police is approximately $2,008 less than the average for the Pascack Valley communities which Washington Township argued were *176 comparable, and would remain less under the new pay proposals of both parties. In addition, it relied on the trends of increasing police salaries in Bergen County under settlements before and after the Cap Law change; the alleged relevance of recent arbitration awards in Paramus and Wallington; the regional school district contract providing for a 9% salary increase for school teachers; and patterns and trends of settlement throughout the State. It also claimed that there was no inability to pay argument; and that its proposal would only result in a total annual cost 1% greater than Washington Township's last offer.
On December 11, 1991, the arbitrator rendered her written opinion and award and adopted Local 206's final economic "offer" and its non-economic proposal for payroll procedures.[10] After quoting the eight statutory criteria of N.J.S.A. 34:13A-16g and reciting the disputed issues, the arbitrator noted that computation of salary figures based on the competing proposals over the three-year contract period, when multiplied by twenty police officers, resulted in a difference of approximately $30,600, with Local 206's "offer" (actually a demand) being the higher figure. The cost of Local 206's proposal was found to be only 1% higher overall than Washington's offer. The arbitrator noted: "The difference between the parties' economic positions is very small. [Local 206] argues that its offer is more reasonable because it more closely conforms with the terms and patterns of settlement among similarly situated Bergen County police officers."
The arbitrator briefly discussed the parties' respective positions on the proper groups of municipalities to be used for purposes of comparison, and then stated:

*177 The PBA also presents a number of towns in which other arbitrators confronted by similar economic arguments have awarded increases in line with the PBA's offer. If comparability is to be dispositive then the patterns and trends of settlement in the county (and in the sector of the state) must be considered. [Emphasis added.]
She found persuasive Local 206's argument that "the trend of economic settlements, both before and after the change in budget [C]ap legislation favors its offer." Moreover, the arbitrator agreed with Local 206's assertion that the information in its pre- and post-Cap limitation chart represents the "`going rate' in the immediate area."
The arbitrator also concluded that Washington Township had the ability to pay Local 206's proposal. She restated Washington Township's "sympathetic arguments" regarding the depressed economy, the non-cash pay benefits enjoyed by its police, the compounding of salary increases caused by split raises, and the fiscal challenges (increased taxes, reduced property values) faced by municipalities. Notwithstanding those arguments, the arbitrator stressed that a comparison with other municipalities (in the group chosen by Washington Township) indicates that the township had the lowest base pay and was below average with respect to holiday and personal day benefits (in the group selected by Local 206).
Furthermore, the arbitrator remarked,
The Township points to the lower economic settlements achieved by its other employee groups. While that is a factor[,] it must be conceded that municipal police are more comparable with police in other municipalities than they are with blue and white collar workers. This is especially true in small municipalities where differential (and higher) compensation for police is the general rule.
In light of Washington Township's 6% offer for 1992 and 1993, the arbitrator rejected its claim that an increase in excess of 4.5% would violate the Cap Law. The arbitrator placed the burden on Washington Township to prove that it could not afford to pay the offer "which appears to be the more reasonable in light of the relevant statutory criteria." She then found that Washington Township had not made an affirmative case in that regard. Finally she determined:

*178 On this record I conclude that the PBA's offer, which costs slightly more than the Township's, is more reasonable because it is closer to the rates and increases achieved in police units throughout the area. There is no showing that the Employer cannot afford to pay the 1% cost difference between the two officers [sic].
I have rejected the Employer's contention that only the towns in the small Pascack Valley region should be used for comparison. However, even within that group the PBA's offer stands up. If the group is expanded to include other similar sized towns in the region and excluding such non-comparable towns as Clifton, Paramus, and Hackensack, the PBA's offer continues to hold up as the more reasonable.
Washington Township unsuccessfully sought to vacate this award in the Chancery Division. In granting Local 206's counterclaim and confirming the arbitration award the Chancery Judge stated:
The contention by [the Township's attorney] is that [many] of the statutory criteria, in his words, were ignored by the arbitrator. It seems to me that's a less than accurate description. Rather than using the word "ignored," it would seem to me more accurate to say that many of them were deemed by the arbitrator to be less significant in this case than the comparability factor that's been described.
It certainly seems clear that there was a good deal of evidence presented and discussions about ability to pay. The other primary focus was indeed comparability and how the police salaries in Washington Township compared with other municipalities. There was the usual argument put forth by the two parties with conflicting views as to what are and are not comparable municipalities.
I see no suggestion that there was any relevant information or relevant factors submitted to the arbitrator which were indeed ignored by her.
........
If indeed there is a pattern whereby arbitrators normally, usually, maybe invariably conclude that comparability to other police units is the most significant factor before them, I am not prepared to say that that's not true. That's a determination which is charged to the responsibility of the arbitrator in any given case.
........
In sum, the question of what is the decisive factor, whether it be comparability or something else, is something charged to the responsibility of the arbitrator. I believe it would be inappropriate for me to reverse this or any other determination based on my conclusion or anyone else's conclusions that undue weight was put on one rather than another factor.

*179 III.
Effective May 10, 1977 the Legislature amended the New Jersey Employer-Employee Relations Act (the Act) (by L. 1977, c. 85) to provide for compulsory interest arbitration as the "terminal procedure" to be followed in public police and fire department negotiations with municipalities when efforts to achieve a voluntary resolution reach an impasse. See N.J.S.A. 34:13A-14 to 13A-21. See also N.J.A.C. 19:16-5.1 and 5.2. N.J.S.A. 34:13A-14 declared:
It is the public policy of this State that in public fire and police departments, where public employees do not enjoy the right to strike, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed.
See also Newark Firemen's Mutual Benevolent Ass'n v. Newark, 90 N.J. 44, 52, 447 A.2d 130 (1982) ("The primary purpose of the fire and police arbitration act, N.J.S.A. 34:13A-14 to -21, is to provide an expeditious means to resolve labor disputes to the maximum benefit of the parties and the public.").
Interest arbitration, which "involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and thus in effect writes the parties' collective agreement," New Jersey State P.B.A., Local 29 v. Town of Irvington, 80 N.J. 271, 284, 403 A.2d 473 (1979), can be distinguished from grievance arbitration, where an arbitrator resolves differences concerning the "interpretation, application, or violation of an already existing contract." Ibid. In the instant cases, since the issues in dispute were economic in nature and the parties were unable to agree on a settlement or an alternative terminal procedure, the respective arbitrators were "confined to a choice between: (a) the last offer of the employer on such issues as a single package and (b) the employee representative's last offer, on such issues, as a single package." N.J.S.A. 34:13A-16d(2). It is argued that there is little incentive for a public employee police unit to accept the municipality's offer since at the very least it would be awarded *180 that amount in interest arbitrations, assuming the employee unit's demands (or "last offer") were higher. Cf. New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 286, 403 A.2d 473.
The arbitrators who conduct interest arbitration are selected by PERC to serve for a three year term, with reappointment contingent upon a screening process. See N.J.A.C. 19:16-5.6(a). The conduct of the arbitration proceedings, including confidentiality of records submitted, issuance of subpoenas, administration of oaths, and scheduling of hearings, is governed by N.J.A.C. 19:16-5.7(a) to (k). Although a stenographic transcript of the arbitration proceedings is not required, see N.J.A.C. 19:16-5.8, the arbitrator must issue a signed, written opinion and award "based on a reasonable determination of the issues, giving due weight to those factors listed in N.J.S.A. 34:13A-16(g) which are judged relevant for the resolution of the specific dispute. The opinion and award shall set forth the reasons for the result reached." N.J.A.C. 19:16-5.9.
The standard of judicial review in interest arbitration proceedings in the public sector is that the award must be supported by substantial credible evidence present in the record. New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 294, 403 A.2d 473. A compulsory arbitration award must be "`based on a reasonable determination of the issues' and... such awards may be vacated, among other things, should the arbitrator have failed to `giv[e] due weight' to the eight factors enumerated in N.J.S.A. 34:13A-16g." Id. at 293, 403 A.2d 473. See Division 540, Amalgamated Transit Union v. Mercer County Improvement Auth., 76 N.J. 245, 253, 386 A.2d 1290 (1978) (recognizing the necessity for more extensive judicial oversight in the compulsory arbitration setting than would be required for parties who voluntarily submitted to binding arbitration of their dispute). In addition, courts are empowered in the public sector to consider evidence extrinsic to the arbitrator's award in determining whether that award *181 should be set aside. Kearny P.B.A. Local 21 v. Town of Kearny, 81 N.J. 208, 219-220, 405 A.2d 393 (1979).
Pursuant to N.J.S.A. 34:13A-16f(5), the arbitrator's award is subject to being vacated where it fails to apply the factors specified in 16g or where the court receives extrinsic evidence upon which the award may be vacated, modified or corrected under N.J.S.A. 2A:24-7 et seq.
Thus, arbitration awards may be set aside when:
[The awards] have been "procured by corruption, fraud or undue means," N.J.S.A. 2A:24-8(a), where the arbitrators have refused to hear pertinent and material evidence or committed other prejudicial "misbehaviors," N.J.S.A. 2A:24-8(c), or where the arbitrators exceeded or imperfectly executed their powers so that a mutual, final and definite award was not made. N.J.S.A. 2A:24-8(d).
[Kearny P.B.A. Local 21 v. Town of Kearny, supra, 81 N.J. at 220, 405 A.2d 393 (emphasis added).]
"Undue means" has been understood to encompass situations where the arbitrator has made a mistake of fact or an inadvertent mistake of law that is either apparent on the face of the record or admitted to by the arbitrator. Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641-642, 57 A.2d 20 (Sup.Ct. 1948). See also McHugh Inc. v. Soldo Constr. Co., 238 N.J. Super. 141, 145, 569 A.2d 293 (App.Div. 1990).
The statutory scheme for compulsory public sector interest arbitration is premised upon a delegation of municipal legislative power to the arbitrator. Kearny P.B.A. Local 21 v. Town of Kearny, supra, 81 N.J. at 229, 405 A.2d 393 (Pashman, J., concurring) ("[T]he arbitrator is in fact empowered to create the terms of labor contracts to which municipalities would otherwise have to give their approval."); City of Atlantic City v. Laezza, 80 N.J. 255, 269, 403 A.2d 465 (1979); Division 540, supra, 76 N.J. at 251-252, 386 A.2d 1290. In order to withstand constitutional scrutiny, such a delegation of legislative authority must be "narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally." Ridgefield Park *182 Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 164, 393 A.2d 278 (1978).[11]
In Division 540 the Supreme Court found constitutional N.J.S.A. 40:37A-96, which required a county improvement authority operating a public transportation system to engage in public sector compulsory (and binding) arbitration to settle its negotiations with drivers and garage personnel. 76 N.J. at 250, 386 A.2d 1290.[12] In upholding the statutory delegation of power, the Court set forth the following guidelines for arbitrators to follow in public sector interest arbitration:
[A]rbitrator[s] must act within the scope of the authority delegated to [them]. [They] must consider the public interest and the impact of [their] decision on the public welfare. [They] must act fairly and reasonably to the end that labor peace between the public and the employer and its employees will be stabilized *183 and promoted. [They] must make findings which are adequate, and sufficient to support the award.
[Id. at 252, 386 A.2d 1290.]
Thus, in light of the legislative standards and the availability of judicial review, the statute at issue in this appeal has been construed to pass constitutional muster under our Supreme Court's decisions, provided the statute's provisions are scrupulously observed by the parties and the interest arbitrator.

IV.
The primary dispute in both appeals concerns the arbitrators' application of the factors set forth in N.J.S.A. 34:13A-16g:
The arbitrator or panel of arbitrators shall decide the dispute based on a reasonable determination of the issues, giving due weight to those factors listed below that are judged relevant for the resolution of the specific dispute:
(1) The interests and welfare of the public.
(2) Comparison of the wages, salaries, hours, and conditions of employment of the employees involved in the arbitration proceedings with the wages, hours, and conditions of employment of other employees performing the same or similar services and with other employees generally:
(a) In public employment in the same or similar comparable jurisdictions.
(b) In comparable private employment.
(c) In public and private employment in general.
(3) The overall compensation presently received by the employees, inclusive of direct wages, salary, vacations, holidays, excused leaves, insurance and pensions, medical and hospitalization benefits, and all other economic benefits received.
(4) Stipulations of the parties.
(5) The lawful authority of the employer.
(6) The financial impact on the governing unit, its residents and taxpayers.
(7) The cost of living.
(8) The continuity and stability of employment including seniority rights and such other factors not confined to the foregoing which are ordinarily or traditionally considered in the determination of wages, hours, and conditions of employment through collective negotiations and collective bargaining between the parties in the public service and in private employment.
[Ibid. (emphasis added).]
The two cases on appeal potentially implicate questions which bear on the constitutionality of the statute as applied by the *184 arbitrators. Notwithstanding the flexibility regarding the determination of legal issues that may be available in private sector arbitration, "[i]n the context of public employment[,] an arbitrator's determinations in binding arbitration are subject to pertinent statutory criteria as well as the public interest and welfare." Kearny P.B.A., Local 21 v. Town of Kearny, supra, 81 N.J. at 217, 405 A.2d 393. "The parties in a public employment case cannot clothe the arbitrator with unbridled discretion...." Communication Workers v. Monmouth County Bd. of Social Servs., 96 N.J. 442, 450, 476 A.2d 777 (1984). Implicit in the Division 540 case's determination that no undue delegation of authority resulted from the statute there at issue is the concept that public sector interest arbitrators, who are not accountable to the taxpayers, must adhere strictly to the statutory standards (both inherent and express) that the Court found supportive of the constitutionality of that statute. See 76 N.J. at 251-253, 386 A.2d 1290.
Emphasizing that subsection 34:13A-16g refers to the factors listed "that are judged relevant," both Locals 206 and 207 argue that the language of the statute is discretionary with respect to the public sector interest arbitrator's consideration of the eight factors. They essentially contend that the final judgment as to the relevancy of the statutory criteria and the reasonableness of the last offers is best left to the arbitrator for the sake of expediency and pragmatism. They further argue that not all of the enunciated criteria are of equal relevance in any given case and that the statutory language gives public sector interest arbitrators discretion to determine which factors are more relevant than others. They concede that those factors advanced by the parties, and with respect to which they submit evidence, must be dealt with by the arbitrator in determining the relevancy of the various factors. But they assert that nowhere does the statute require, expressly or impliedly, that the arbitrator take evidence with respect to each of the criteria set forth in subsection 16g, or that substantial evidence be presented with respect to each criteria.
*185 We disagree. The respondents' argument would permit arbitrators to read certain, if not most, of the criteria right out of the statute. Without proper consideration of the legislative standards, public interest arbitration may very well be an undue delegation of legislative authority. Cf. Division 540, supra, 76 N.J. at 252, 386 A.2d 1290; Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., supra, 78 N.J. at 164, 393 A.2d 278. It may be that in public sector interest arbitrations the parties fail to present evidence on some factors. This in turn may lead the arbitrator to ignore or dismiss in a conclusory fashion the relevance of those criteria. Respondents justify this outcome by asserting that "[f]ailure to raise an issue in arbitration proceedings or failure to assert an objection constitutes a waiver thereof." As between private parties such a waiver theory may be appropriate. However, the public interests at stake in public sector interest arbitration are and must be paramount and demand more attention to the statutory factors than an unsupported passing reference.[13]See generally Kearny P.B.A., Local 21 v. Town of Kearny, supra, 81 N.J. at 217, 405 A.2d 393.
In short, as stated in one New York decision, "to the extent the [statutory] criteria are not controverted, i.e., `put in issue,' [arbitrators] should nevertheless elicit the position of the parties and/or pertinent facts and consider the significance of such in [their] decision." City of Batavia v. Local 896, Batavia Firefighters Ass'n, 19 P.E.R.B. ¶ 7510, 7521-22 (N.Y. Sup. Ct. 1986). Moreover, a cursory recitation of the statutory factors should not suffice, nor would factual specificity with respect to only some of those factors be adequate. See City of *186 Yonkers v. Mutual Aid Ass'n of Paid Fire Dept., 80 A.D.2d 597, 436 N.Y.S.2d 1009, 1010 (1981). We find the reasoning of the cited decisions persuasive. Mere parroting of the words of the statute is not helpful in determining whether the arbitrator has appropriately analyzed all of the factors in the statute.
Furthermore, due to potential constitutional implications here, it is only reasonable that there be a presumption that all of the factors be deemed relevant, notwithstanding the directory nature of the statutory standards. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 293, 403 A.2d 473; Division 540 v. Mercer County Improvement Auth., supra, 76 N.J. at 251-254, 386 A.2d 1290. See generally 1 Sutherland Statutory Construction § 4.18, at 174 (4th ed. 1985) (Discretionary statutory direction may not provide adequate standards. Delegation would be invalid because there is no requirement to follow it. "To avoid invalidity doubt may be resolved in favor of a mandatory interpretation.").
A presumption that all of the statutory factors are relevant requires parties to submit evidence on each subject, either to negate or reinforce a given factor's relevance. This would afford a proper basis for public interest arbitrators to make an informed decision as to relevance. As a corollary, the interest arbitrators must detail in their opinions the specific reasons why an enumerated factor is not "judged relevant" in arriving at the final determination. This would also facilitate judicial review of public sector interest arbitration awards. See N.J.S.A. 34:13A-16f(5). We do not hold that each factor be accorded equal weight. We merely require that the arbitrator's award indicate what factors are deemed relevant, satisfactorily explain why a certain factor (or factors) is not relevant, and provide an analysis of the evidence on each relevant factor. It must be remembered that arbitrators not only are charged with resolution of the disputed issue, but also are required to perform the fact-finding function that is needed for purposes of meaningful judicial review.
*187 Here, as will appear from a review of the statutory factors, neither the parties nor arbitrators sufficiently considered the statutory factors set forth in N.J.S.A. 34:13A-16g.

V.

A.  Hillsdale
The Hillsdale arbitrator's opinion and award lacks a sense of application and analysis of most of the listed factors in 16g. It is thus subject to reversal. See N.J.S.A. 34:13A-16f(5).[14] Moreover, in view of the limited basis for the arbitrator's award it can hardly be said to be "supported by substantial credible evidence presented in the record." Division 540, supra, 76 N.J. at 254, 386 A.2d 1290. The inadequacy of the arbitrator's analysis is due in part to the failure of the parties to present evidence or arguments on some of the factors and in part to the arbitrator's failure to address evidence and arguments on certain factors.[15]
There may well be inherent difficulties in considering all of the statutory factors and then making a "reasonable determination of the issues," N.J.S.A. 34:13A-16g, when the only choice possible to be made under the statute is between "the last offer of the employer on such [economic] issues as a single package" and "the employee representative's last offer, on such [economic] issues, as a single package." N.J.S.A. 34:13A-16d(2). Resolution *188 of any such difficulty, however, is a matter left for legislative consideration. Notwithstanding this difficulty, the statute requires that arbitrators will make such an effort in resolving the negotiating impasse between the public employer and public employees. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 293, 403 A.2d 473. That simply was not done here. A remand for a new arbitration before a new arbitrator not involved in either of these arbitrations is thus required.
Our observations here, and also in the Washington Township matter, are by way of example and not meant to be restrictive of the proofs which may be presented. N.J.S.A. 34:13A-16g(1) requires consideration of the interests and welfare of the public at large, both in the area affected and in general. This factor focuses in part on the priority to be given to the wages and monetary benefits of public employees within a municipality's budget and plans. The arbitrator's opinion reveals that this factor was not given real consideration, let alone "due weight." Hillsdale's argument was not addressed. It contended: "[U]nless it can be demonstrated that the salaries and benefits paid to members of the Police Department are so non-competitive as to result in deterioration of the public safety then the public interest mandates that employees be paid only ... what a municipality can reasonably afford." The interest arbitrator simply reiterated, without analysis, the borough's position on this factor and determined that it nonetheless had the ability to pay the award.[16]
It might be argued that the arbitrator's brief discussion of the borough's ability to pay constituted implicit consideration of the public's interests and welfare. However, the Legislature *189 surely intended that there be more to consideration of the public's interest and welfare than mere financial impact vis-a-vis ability to pay (notwithstanding instances where evidence will inevitably impact multiple factors). Otherwise, factor (6) would be redundant. The Legislature hardly included meaningless words, particularly in view of the language in N.J.S.A. 34:13A-16f(5) making an express ground for vacating an award the "failure to apply the factors specified in subsection g. below."
Nor can it be argued that this factor was not deemed relevant to the resolution of this dispute. It is unlikely that the "interests and welfare of the public" can ever be irrelevant when an interest arbitrator is essentially limited, under N.J.S.A. 34:13A-16c and d(2), to a choice between the municipality's or local unit's last offer. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 293, 403 A.2d 473; Division 540, supra, 76 N.J. at 252, 386 A.2d 1290. This is especially true in light of the fact that the arbitrator's award may have a profound, albeit indirect, impact on a municipality's policy decisions.[17]See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 296-299, 403 A.2d 473. The importance of this factor to the overall legitimacy of the award has given rise to the suggestion that arbitrators have an obligation, when weighing the public's interests and welfare, to justify the choice ultimately made. Anderson & Krause, supra note 11, 55 Fordham L.Rev. at 162 (citing Robert G. Howlett, Interest Arbitration in the Public Sector, 60 Chi-Kent L.Rev. 815, 832 (1984)).
Analysis taking this factor into account is lacking in the award, and evidence relating to it was not adequately presented. *190 Nor was consideration given to the tension between maintaining adequate police service without exorbitant price, or to the prospects for police or other municipal lay-offs. Hillsdale pointed out that (1) its equalized tax rate was one of the highest in Bergen County and in the Pascack Valley area; (2) its assessed value and value per capita are below average; and (3) there is not much space within the town for available growth and resulting new ratables.
N.J.S.A. 34:13A-16g(2) requires comparison with other employees, both public and private. The post-hearing briefs submitted to the arbitrators by the local units in both appeals reveal that most of the focus was upon police salary increases in "comparable" municipalities throughout Bergen County and the municipal employer's ability to pay the award sought.
The arbitration award is replete with reference to comparability of police salaries, raising the not-so-subtle inference that parity is considered the goal. For example, the arbitrator suggested that Hillsdale's offer was not as reasonable as Local 207's because no justification had been offered for leaving the percentage (as opposed to actual dollars) increase in police salary below average. Yet no satisfactory reasons are given to explain why this should be so when the Legislature saw fit to include other factors for consideration. The statute also expressly calls for a comparison of the "wages, hours, and conditions of employment of the employees involved" not only with other employees performing similar services, but also with other public and private sector employees. N.J.S.A. 34:13A-16g(2)(a)-(c). The arbitrator's opinion makes no reference to any other public or private employment. It thus appears that the Hillsdale arbitrator based his decision almost exclusively upon Local 207's demands.
Hillsdale and Washington Township, as well as the various amici, argue that this failure to follow the statutory criteria *191 pervades interest arbitration awards.[18] Materials submitted by amicus curiae Bergen Municipal Coalition indicate that overall compensation rates in state and local government had slowed to 3.5% in 1991, down from 5.3% in 1990. See Kearny P.B.A. Local 21 v. Town of Kearny, supra, 81 N.J. at 219-220, 405 A.2d 393 (in reviewing arbitration awards, courts may look to evidence outside of the record); Division 540 v. Mercer County Improvement Auth., supra, 76 N.J. at 253, 386 A.2d 1290. See also N.J.S.A. 34:13A-16f(5). This information indicates that there is data upon which to make the required statutory comparisons.
We may also take judicial notice of the state of the economy in recent years. The Hillsdale arbitrator gave a passing nod to reality, but felt bound to follow the trend of increases evidenced by the numerous awards and settlements presented. He said: "Although one can certainly question the level of increases in light of the current economic times, nevertheless this is the neighborhood out there. Certainly the PBA's offer is midstream." The "neighborhood" and "stream" used by the arbitrator did not take into account other public employees and private sector employees as the statute requires. Any difficulty in comparisons required by the statute does not obviate the necessity of applying such comparisons.
Comparability with police salary increases in other municipalities is not the dispositive factor. Reasons must be stated for selection of any reference group and an explanation as to why comparisons with public and private employees were not undertaken as the statute facially requires. Over-reliance on comparability inevitably leads (if it has not already) to what is known as "whip-sawing" or a domino effect of "keeping up with the *192 Jones's," leaving municipalities little choice but to make last offers very close to the range sought by the employee unit if they are to have their offers even considered,[19] providing that the employee unit (recognizing that at the very least it is assured of receiving the municipality's offer) does not raise its demand even higher.[20]
The element of risk may in part explain the asserted rapid increase in police salaries compared to other salaries. But that factor is not mentioned in the arbitrator's opinion. The record contains no analysis of the risks faced by Hillsdale and Washington Township police officers, and also no comparison with risks faced by their counterparts in Hackensack, Newark, and Paterson, as well as other municipalities,[21] or even other types of municipal employees. The arbitrators in both cases also offered no analysis of how municipalities in the groupings selected for comparison are actually comparable. The choice of comparable communities was simplistic to the Hillsdale arbitrator: "[T]he bulk of the Towns [in Bergen County] are comparable and little distinction exists as to the nature of the police work." This conclusion lacks support in substantial credible evidence in the record.
N.J.S.A. 34:13A-16g(3) requires consideration of the overall compensation package when benefits are included. Hillsdale produced charts showing breakdowns of base pay, fringe benefits (medical coverage, insurance, personal days and vacation *193 pay) and other forms of compensation (such as education credit, longevity, sick pay, holiday pay, and night differential) throughout Bergen County. Reference to these items is not evident in the arbitrator's choice of Local 207's last offer position.
N.J.S.A. 34:13A-16g(4), referring to stipulations of the parties, does not appear applicable in either the Hillsdale or Washington Township matters.
N.J.S.A. 34:13A-16g(5) requires the interest arbitrator to consider the public employer's lawful authority. The Local Government Cap Law, N.J.S.A. 40A:4-45.2 and 45.3 (Supp. 1992-1993) (the "Cap Law"), generally prohibits municipalities from increasing their final appropriations and budget by more than "5% or the index rate, whichever is less, over the previous year." See also N.J.S.A. 40A:4-45.1a (Supp. 1992-1993). This is not a line item limit, but rather operates to limit the overall budget. It is a factor the interest arbitrator must take into consideration. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 281-282, 293, 403 A.2d 473. "In compulsory arbitration settings, the arbitrator is bound by statute to take account of a municipality's Cap Law constraints prior to the rendition of such an award." City of Atlantic City v. Laezza, supra, 80 N.J. at 268-269, 403 A.2d 465. Indeed, "an arbitrator's consideration of a town's Cap situation is mandated by the constitutional proscription against undue delegation of legislative authority to private individuals." New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 293, 403 A.2d 473 (citations omitted). P.B.A., Local 29 teaches that N.J.S.A. 34:13A-16g(1), (5) and (6) all require consideration of the Cap Law constraints. 80 N.J. at 293, 403 A.2d 473. Failure to consider such constraints makes the arbitrator's award "subject to vacation on grounds of procurement by `undue means.'" City of Atlantic City v. Laezza, supra, 80 N.J. at 269, 403 A.2d 465 (citing N.J.S.A. 2A:24-8(a)).
*194 Local 207 had charts portraying settlements and awards before and after the change in the Cap limitation as relatively consistent. Its offer was said to have been below the average of those awards. However, there was an inadequate application of the Cap Law effect related to the implication of the award on other municipal budget items. This is reversible error.
N.J.S.A. 34:13A-16g(6) requires that the arbitrator consider the financial impact on the municipality, its residents and its taxpayers, whether wealthy or poor. The Hillsdale arbitrator based his award solely on the municipality's overall ability to pay an award based on Local 207's last offer.[22] He in effect required Hillsdale to prove that it would suffer a "substantially detrimental result." No authority exists for such a conclusion. The arbitrator further opined that Hillsdale would have to show financial difficulties which would be created or worsened by adopting Local 207's offer. Such a standard does not appear reasonable. A municipality should not have to demonstrate it would be financially crippled before its arguments could be found to be sufficient.
As stated earlier, Hillsdale did discuss the local economic situation. Its argument focused upon the additional burden which would be placed on its residents in order to fund Local 207's last offer position. However, the record does not reflect the percentage of citizens on relatively fixed incomes and the impact of tax increases and other costs, considerations which the statutory listing confirms to be highly relevant. The arbitrator did not apply such considerations.
It does not necessarily follow that an arbitration award in favor of the employee unit will inevitably force the municipality to increase its overall amount of expenditures, even amounts *195 earmarked for police costs. The public employer "retains the discretion to diminish the size of its police force and limit the areas in which patrolmen will be deployed." New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 288-289, 403 A.2d 473.
The next factor an interest arbitrator must apply is in N.J.S.A. 34:13A-16g(7), the cost of living. Statistics produced by Hillsdale indicated that over the past nine years its police had salary increases which exceeded the consumer price index by approximately twenty percent. The arbitrator dismissed this factor, simply stating: "The cost of living and particularly real estate by common observation is high." No application of the factor was offered to explain why the borough's arguments were actually seen to support Local 207's proposal. Nor did the arbitrator consider or discuss the disparity between police salary increases and the consumer price index. Indeed, evidence of the relationship between the cost of living and recent salary increases for other municipal employees appears relevant under this factor, as well as under 16g(2).
Subsection g(8) refers to continuity and stability of employment, including seniority rights and other factors. This factor was neither considered nor applied by the arbitrator or Local 207. Any longevity differential would be relevant to analysis of this factor, as well as the factor in 16g(3). Hillsdale argued that its police force has never been reduced other than by normal attrition, and there were no "give-backs" or salary freezes despite the current recession. Such evidence would seem relevant, particularly in comparison with other public employees as well as private sector employees generally. Cf. N.J.S.A. 34:13A-16g(2).
Thus, the Hillsdale award and opinion does not withstand judicial scrutiny. The order confirming it must be reversed, the award vacated, and the matter remanded for a new arbitration hearing before a new arbitrator. See Manchester Township Bd. of Educ. v. Carney, Inc., 199 N.J. Super. 266, 277-278, 282, *196 489 A.2d 682 (App.Div. 1985); La Stella v. Garcia Estates, Inc., 128 N.J. Super. 173, 177-178, 319 A.2d 274 (App.Div. 1974), rev'd on other grounds, 66 N.J. 297, 331 A.2d 1 (1975).

B.  Washington Township
Washington Township's appeal requires a similar analysis of the interest arbitrator's award. Although the Washington Township arbitrator was more thorough in her consideration of the statutory criteria than her counterpart in the Hillsdale matter, her opinion and award lack sufficient analysis and application of certain of the statutory factors, and is, therefore, also subject to vacation. See N.J.S.A. 34:13A-16f(5); Division 540 v. Mercer County Improvement Auth., supra, 76 N.J. at 253-254, 386 A.2d 1290. This inadequacy is due in part to the failure of the parties to present evidence or arguments on some of the factors. A remand for a new arbitration is nonetheless required. Once more we note that the difficulty of the arbitrator's decision making process is compounded under N.J.S.A. 34:13A-16g, when the choice must be made between "the last offer of the employer on such [economic] issues as a single package" and "the employee representative's last offer, on such [economic] issues, as a single package." N.J.S.A. 34:13A-16d(2). The arbitrator may be faced with two last offers which are in fact both unreasonable under a proper application of the statutory criteria. However, the statute in effect, and absent agreement, requires the arbitrator to choose and justify one of them.
A review of Washington Township's arbitrator's opinion reveals that N.J.S.A. 34:13A-16g(1), which requires application of "the interests and welfare of the public," was apparently not applied, let alone given "due weight." Concededly, it might be inferred that the interest and welfare of the public was considered unaffected by Local 206's proposal since the arbitrator's computation indicates that the difference in the parties' packages was about $30,000.00 over the contract period.[23] *197 However, as previously observed, this is not sufficient. We refer to our discussion of this factor in connection with the Hillsdale award. The "interests and welfare of the public" should not be irrelevant, particularly when an arbitrator, unaccountable to the electorate, decides governmental affairs in selecting one side's last offer. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 293, 403 A.2d 473; Division 540, supra, 76 N.J. at 252, 386 A.2d 1290. Adequate evidence of this factor was not presented nor taken into account in the award.
N.J.S.A. 34:13A-16g(2) requires comparisons with the situations of other employees, both public and private. A review of the post-hearing brief submitted by Local 206 reveals that most of its focus is upon the salary increases in "comparable" municipalities throughout Bergen County and the municipal employer's ability to pay the award sought. As in the Hillsdale matter, the arbitration award echoes concerns with comparability, and appears to make parity the goal. However, no satisfactory reasons are given to explain why parity should be the goal when the Legislature included other factors for consideration. The discussion in Part V.A., supra, is relevant here.
The arbitrator, however, essentially deleted the broader elements of the comparison factor from the statute. She said: "While [comparison with other employee groups] is a factor it must be conceded that municipal police are more comparable with police in other municipalities than they are with blue and white collar workers. This is especially true in small municipalities where differential (and higher) compensation for police is the general rule." As noted, Washington Township, Hillsdale, and the various amici inform us that such reasoning pervades interest arbitration awards.
*198 Notwithstanding the arbitrator's prefatory statement to the effect that "[i]f comparability is to be dispositive," comparability with police salary increases in other municipalities should not be dispositive, especially absent overriding reasons for selection of the reference group and an explanation as to why comparisons to other public and private employees were deemed irrelevant.
Put simply, there is insufficient reason presented in the record why Local 206's members were entitled to the percentage increases sought, while other municipal employees (both organized and unorganized) were given only a 4.5% salary increase.
N.J.S.A. 34:13A-16g(3) refers to the overall compensation package when benefits are included. The interest arbitrator acknowledged that Washington Township's police receive senior officer differential after seventeen years of service and a higher-than-average clothing allowance. Nevertheless, she emphasized the below average base pay and the fact that the fourteen days of holiday and personal days granted to Washington Township police are less than the average of fifteen and one-half in Local 206's reference group.[24] As such, the arbitrator seemed to find that the pros and cons of Washington Township's non-wage economic aspect of the overall package canceled out its relevance.
The factor in subsection g(5) of the "lawful authority of the employer" was discussed in our prior review of the Hillsdale award. Since the parties and arbitrator in the Washington Township appeal refer to 4.5% rather than 5% as the Cap limit, *199 we assume that this lower figure was the then-current index rate computed by the United States Department of Commerce, Bureau of Economic Analysis. See N.J.S.A. 40A:4-45.1a (Supp. 1992-1993).
In rejecting Washington Township's argument that Local 206's last offer position would force the township to violate the Cap Law, the arbitrator correctly pointed out that "[t]here is ... no mandate limiting specific line items." See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 281-282, 403 A.2d 473. Furthermore, the arbitrator pointed out that the township's offer of 6% increases for 1992 and 1993 appeared to undercut its argument.
Subsection g(6) requires consideration of the financial impact on the town, its residents and its taxpayers. This factor was considered by the arbitrator solely on the municipality's ability to pay the relatively small difference between Local 206's offer and Washington Township's, which amounted to approximately $30,000 or about 1% difference in pay out costs over the three-year term of the contract. The arbitrator's opinion implies that this factor could not be weighed in favor of Washington Township unless it could prove that it could not pay. We reject this argument for the reasons discussed above under our analysis of the Hillsdale award.
The "cost of living" factor in N.J.S.A. 34:13A-16g(7) does not appear to have been considered. It has relevance because evidence submitted in the Hillsdale case indicated that over the past nine years the police there enjoyed salary increases which exceeded the cost of living by approximately twenty percent. Analysis by the arbitrator on this point as to Washington Township's situation is lacking.
The factor of continuity and stability of employment in N.J.S.A. 34:13A-16g(8) does not seem to have been considered. The senior officer differential appears relevant to an analysis of this factor, as well as that in 16g(3). Likewise, evidence relating to lay offs (if any) of police officers, as well as other public *200 sector employees, might prove relevant, especially in comparison to the private sector generally. Cf. N.J.S.A. 34:13A-16g(2).
In sum, the interest arbitration award in favor of Local 206 cannot stand under the statutory criteria and must be vacated.

VI.
The orders confirming the arbitration awards in the Borough of Hillsdale and the Township of Washington are reversed, the awards are vacated, and the matters are remanded for new arbitration hearings in accordance herewith before new arbitrators not previously involved in either of these arbitrations.
NOTES
[1] PERC is a tripartite commission composed of two representatives of public sector employers, two representatives of public sector employee unions and three public members. See N.J.S.A. 34:13A-5.2. It is charged with responsibility for administration of labor dispute matters in public employment. See N.J.S.A. 34:13A-5.1(a).
[2] Although N.J.S.A. 34:13A-16 uses this phrase, it is nonetheless somewhat amorphous. It can be argued that the paramount "interest" involved should be the public interest. The phrase supposedly refers to arbitration of positions regarding terms and conditions of a public employment contract, rather than to arbitration of rights or grievances under the contract.
[3] Public sector negotiations occur by virtue of N.J. Const. art. I, ¶ 19, and L. 1968, c. 303 (N.J.S.A. 34:13A-5.3 et seq., as amended). The constitutional provision gives public employees "the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." Unlike the reference in that paragraph in the State Constitution to the right of employees in the private sector to "organize and bargain collectively," public employees were not extended the right to "bargain collectively." Rather, they have the right to organize and engage in collective negotiations. See, e.g., New Jersey State College Locals v. State Bd. of Higher Educ., 91 N.J. 18, 25, 449 A.2d 1244 (1982); New Jersey Turnpike Employees' Union, Local 194 v. New Jersey Turnpike Auth., 64 N.J. 579, 581, 319 A.2d 224 (1974). In addition, public employees do not have a right to strike or engage in work stoppages. See New Jersey State P.B.A., Local 29 v. Town of Irvington, 80 N.J. 271, 288, 403 A.2d 473 (1979); N.J.S.A. 34:13A-14.
[4] Stenographic transcripts of arbitration proceedings are not required under N.J.A.C. 19:16-5.8. According to Hillsdale's appellate brief, its documentary evidence (including detailed compensation analysis) was explained in terms of the statutory criteria in N.J.S.A. 34:13A-16g by its Borough Administrator.
[5] Pursuant to N.J.S.A. 34:13A-16d(2), the arbitrator is confined to a choice between the employer's and employee representative's last offers as a single package on economic issues in dispute unless the parties agree to another "terminal procedure." See N.J.S.A. 34:13A-16b, c and d. An employee unit's "offer" may be more aptly described as a request or demand.
[6] Pursuant to the Local Government Cap Law, N.J.S.A. 40A:4-45.2 and 45.3 (Supp. 1992-1993) (the "Cap Law"), municipalities are prohibited from increasing their final appropriations and budget by more than "5% or the index rate, whichever is less, over the previous year." See also N.J.S.A. 40A:4-45.1a (Supp. 1992-1993).
[7] See note 5, supra.
[8] Whenever contracting jobs within Washington Township involved the "opening" of the road surface, Local 206 sought to have the chief of police assign officers to those work sites for public safety and security, passing on the cost of the police presence to the contractor.
[9] No women officers were on the police force as of the arbitration hearing.
[10] With respect to non-economic issues submitted for determination, the arbitrator awarded police department members the opportunity to obtain their payroll checks one day earlier than other municipal employees. The other three non-economic proposals by Local 206 were rejected for various reasons. There is no appeal as to any of the non-economic proposals.
[11] For further discussion of the constitutionality of binding interest arbitration in the public sector, see Arvid Anderson & Loren A. Krause, Interest Arbitration: The Alternative to the Strike, 56 Fordham L.Rev. 153 (1987); Rebecca Hanner White, Robert E. Kaplan, and Michael W. Hawkins, Ohio's Public Employee Bargaining Law: Can it Withstand Constitutional Challenge?, 53 U.Cinn.L.Rev. 1 (1984); James D. Lawlor, Annot., Validity and Construction of Statutes or Ordinances Providing for Arbitration of Labor Disputes Involving Public Employees, 68 A.L.R.3d 885 (1976 & Supp. 1992).
[12] The Court acknowledged that it would be unconstitutional to require binding public sector arbitration for matters concerning "governmental policy determinations which involve an exercise of delegated police power." 76 N.J. at 251, 386 A.2d 1290. Examples of matters which, if delegated to binding arbitration would impinge upon a municipality's inherent management prerogative, include decisions regarding layoffs and reductions of budgetary appropriations for non-payroll costs such as public works projects, cultural and recreational programs, and other reduced municipal services. See New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 296-299, 403 A.2d 473. See also Paterson Police P.B.A. v. Paterson, 87 N.J. 78, 98, 432 A.2d 847 (1981) (municipality could not be required to negotiate on matters concerning methods of organization and deployment of police in order to comply with economic needs; as such, municipality retains discretion "to forgo for economic reasons the filling of vacancies by promotion"); State v. State Supervisory Employees Ass'n, 78 N.J. 54, 393 A.2d 233 (1978) (employee organizations cannot compel public employers to negotiate with respect to subjects which would "significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy").
[13] We further note that the argument by Locals 206 and 207 that consideration of the factors in 16g is purely discretionary with the individual arbitrator is untenable in light of N.J.S.A. 34:13A-16f(5), which expressly provides for vacation of an award "for failure to apply the factors specified in subsection g. below." The two subsections must be construed in connection to each other in order to produce a harmonious whole. See 2A Sutherland Statutory Construction § 46.05, at 103 (5th ed. 1992).
[14] We need not address the issue of whether an interest arbitrator's award in the public sector may constitutionally be made "irreversible." Compare 16f(5) with New Jersey State P.B.A., Local 29 v. Irvington, supra, 80 N.J. at 293, 403 A.2d 473; Division 540, supra, 76 N.J. at 251-254, 386 A.2d 1290.
[15] As the Bergen Municipal Coalition points out, when parties only choose to present evidence that they feel will advance their position, the arbitrator "does a disservice ... when he [or she] fails to demand information that will allow him [or her] to make a decision based upon the statutory criteria and the authority delegated to him [or her]." It should be pointed out that Hillsdale produced evidence or submitted arguments directed towards six of the eight factors of 16g; it failed to consider the Cap Law and offered no stipulations.
[16] It is not enough to simply assert that the public entity involved should merely raise taxes to cover the costs of a public interest arbitration award. That would also conflict with other enumerated factors and render them hollow.
[17] The Legislature is not oblivious to the problems of interest arbitration in the municipalities of this State. See generally Mendez, Unions, Municipalities Debate Salary Arbitration for Police, Firefighters, The Star Ledger, Jan. 12, 1993, at 24; Sanderson, Curb Sought on Arbitration, The Record, Jan. 12, 1993, at A-3.
[18] Hillsdale candidly admits that "its own proofs did not specifically address each of the enumerated criteria. Neither Local 207 nor Hillsdale introduced any proofs with respect to comparable private employment ..., nor with respect to private employment in general.... In turn, neither the arbitrator, nor the court below, insisted that such evidence be submitted."
[19] Cf. New Jersey State P.B.A., Local 29 v. Town of Irvington, supra, 80 N.J. at 286, 403 A.2d 473 ("[T]his particular form of arbitration encourages voluntary settlements by forcing the parties to tailor their proposals with an eye to the arbitrator's selection of the more reasonable submission.") (citations omitted).
[20] Arguably this may be an inherent problem with binding interest arbitration in the public sector, for which resolution is in the hands of the Legislature.
[21] Hillsdale presented data from Jersey City and Paterson which indicated that police officers in those cities earned less in overall compensation than Hillsdale's officers, notwithstanding the greater risks and volume of work faced in such larger communities.
[22] Local 207 had presented the testimony of an expert in accounting and finance, with respect to Hillsdale's fiscal stability and economic position. Hillsdale countered with testimony of its Borough Administrator.
[23] The arbitrator acknowledged that this figure does not take into account the higher costs of officers' (as compared to patrolmen's) pay.
[24] The arbitrator's comparisons on this point are confusing because she seems to use Washington Township's grouping of the Pascack Valley towns for purposes of the base pay ranking (the township had the lowest base pay in its own grouping), but then switches to Local 206's larger group to indicate that Washington Township was below average in paid holidays and personal days, overlooking the fact that the township was above average (by one day) in its own preferred grouping.