76 N.J. 245 (1978)
386 A.2d 1290
DIVISION 540, AMALGAMATED TRANSIT UNION, AFL-CIO, AN UNINCORPORATED ASSOCIATION, PLAINTIFF-RESPONDENT,
v.
MERCER COUNTY IMPROVEMENT AUTHORITY (MERCER METRO DIVISION), A BODY POLITIC, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued March 8, 1978.
Decided April 26, 1978.
*246 Mr. Frank V. Walsh, Jr. argued the cause for appellant (Mr. Gregory V. Hopkins, on the brief; Mr. Frank V. Walsh, Jr. attorney).
Mr. Richard P. Weitzman argued the cause for respondent (Mr. Myron D. Milch, on the brief); Messrs. Weitzman, Brady and Weitzman, attorneys).
Ms. Erminie L. Conley, Deputy Attorney General, argued the cause for amicus curiae the State of New Jersey (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by SULLIVAN, J.
This is a labor dispute in the public sector. The Mercer County Improvement Authority (Mercer Metro Division) is the operator of a public transportation facility in Mercer County. Division 540, Amalgamated Transit Union, AFL-CIO, an unincorporated association, plaintiff herein, represents the drivers, garage personnel and clerical workers of Mercer Metro.
During the spring of 1975 plaintiff and defendant met to negotiate the terms and conditions of a collective bargaining agreement to replace an existing agreement between the parties which was due to expire on March 31, 1975. Upon failure to reach agreement, primarily over the issue of wages including a cost of living allocation, plaintiff-union demanded that the dispute be submitted to binding arbitration in accordance with N.J.S.A. 40:37A-96. When defendant refused, the union filed the present suit which, inter alia, *247 sought to compel defendant to comply with the statutory provision which requires defendant to offer to submit the dispute to binding arbitration. Defendant, on its part, challenged the constitutionality of such provision.
The Superior Court, Chancery Division, upheld the constitutionality of N.J.S.A. 40:37A-96 and entered final judgment ordering the defendant to submit the labor dispute between it and plaintiff to final and binding arbitration pursuant to the statute. On appeal by defendant, the Appellate Division affirmed the Chancery Division ruling. Certification was granted by this Court on defendant's petition, solely on the issue of the constitutionality of N.J.S.A. 40:37A-96. 71 N.J. 518 (1976). We affirm.
The Mercer County Improvement Authority exists and functions under the "county improvement authorities law," L. 1960, c. 183, N.J.S.A. 40:37A-44 et seq. Its involvement in the operation of a public transportation facility has this background.
Capitol Transit, Inc. was a privately owned transportation facility operating bus lines in Mercer County. In the 1960s, it began to sustain increasingly heavy financial losses. During this period Mercer County tried to sustain the operation by providing subsidies, but by 1968 Capitol Transit's condition had worsened to a point where it faced bankruptcy and gave notice that it intended to cease operations.
At this point the New Jersey Legislature, by L. 1968, c. 66, adopted amendments to N.J.S.A. 40:37A-44 et seq. so as to permit a county improvement authority to acquire a privately owned transportation system and operate the same as a public transportation facility. Defendant Improvement Authority thereupon purchased the assets of Capitol Transit and took over its operations through its Mercer Metro Division.
The principal financing for this acquisition came from a federal grant made under the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1601 et seq. However, federal *248 assistance under this act is conditioned on fair and equitable arrangements being made to protect the interests of employees affected by such assistance. Section 1609(c) specifies that:
(c) * * * Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2) (f) of this title. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements.[1]
The New Jersey Legislature in empowering a county improvement authority to acquire a private transportation system and operate it, has specified protective conditions and benefits for the employees of a transportation system so acquired and operated. N.J.S.A. 40:37A-94 and -95. These include continuation of employment rights, privileges and benefits.
Another section, N.J.S.A. 40:37A-96 calls for arbitration of labor disputes as follows:
In the case of any labor dispute between a county improvement authority operating a public transportation facility and its employees where collective bargaining does not result in agreement, irrespective of whether such dispute relates to the making or maintaining of collective bargaining agreements, the terms to be included in such *249 agreements, the interpretation or application of such agreements, the adjustment of any grievance or any difference or any question that may arise between the authority and the labor organization representing its employees concerning wages, salaries, hours, working conditions or benefits including health and welfare, sick leave, insurance or pension or retirement provisions, the authority shall offer to submit such dispute to final and binding arbitration by a single arbitrator or by a tripartite board of arbitrators. Upon acceptance by the labor organization of such arbitration proposal, * * * [an arbitrator is then selected or tripartite board of arbitrators appointed in accordance with specified procedures]. The arbitration proceeding shall take place in the manner provided by the rules of the New Jersey State Board of Mediation applicable to arbitration of labor disputes and the decision of the arbitrator or board of arbitrators shall be final and binding upon the parties.
The foregoing section provides for arbitration of labor disputes involving the terms to be included in collective bargaining agreements (interest arbitration). It is also to be noted that the requirement to submit to arbitration is imposed only on the Authority.
Other provisions of the statute emphasize the uniqueness of the authority's relationship with its transportation system employees. A county improvement authority is a public body corporate and politic. N.J.S.A. 40:37A-46. Nevertheless, if it operates a public transportation facility its employees in that facility have the right to "bargain collectively" through their union as to terms and conditions of employment. N.J.S.A. 40:37A-92. The Authority has the power to enter into a closed shop agreement with the union and to have a check-off system for the payment of union dues and assessments. N.J.S.A. 40:37A-97. As heretofore noted, the Authority is subject to compulsory and binding arbitration of labor disputes that arise between it and its transportation facility employees where collective bargaining does not result in agreement. N.J.S.A. 40:37A-96. The constitutionality of this latter provision is the issue in this case.
There can be no doubt but that under the provisions of the Urban Mass Transportation Act of 1964 and the implementing statutory provisions of L. 1968, c. 66 enacted by our *250 Legislature, employees of a transportation facility taken over by a county improvement authority and operated by it, have some rights which are consistent with private employment. However, in the overall picture, they must be considered as public employees in the sense that they are employed by a public body corporate and politic. Counsel for plaintiff-union in his supplemental brief filed with this Court concedes that as employees of such a public body, they do not presently have the right to strike, a right they formerly enjoyed as employees of Capitol Transport.
We find the provisions for compulsory and binding arbitration contained in N.J.S.A. 40:37A-96 to be constitutional. The proliferation of labor disputes in the public sector and the resultant disruption of essential public services has caused many state legislatures to try to formulate new approaches to the resolution of these disputes. In the past, in New Jersey, statutory provisions for binding arbitration of labor disputes in the public area merely authorized the parties to enter into an agreement to submit the labor dispute to binding arbitration. N.J.S.A. 34:13A-7; N.J.S.A. 34:13A-5.3. However, this required mutual agreement and often did not provide resolution of the problem.
The concept of compulsory and binding arbitration of labor negotiation as well as grievance disputes in the public sector has been coming more and more into favor. See McAvoy, "Binding Arbitration of Contractual Terms: A New Approach to the Resolution of Disputes in the Public Sector," 72 Colum. L. Rev. 1192 (1972). The New Jersey Legislature has not only adopted this procedure in the statutory section under consideration, but also has recently imposed compulsory arbitration for resolution of such disputes between municipal bodies and their police and firemen. N.J.S.A. 34:13A-14 to -21.[2]
*251 The principal objection made to compulsory and binding arbitration of labor negotiation disputes in the public sector is that it constitutes an unlawful delegation of public authority and responsibility to a private person or persons. However, most of the cases that have dealt with the question have sustained the concept as an innovative way to avoid the morass of deadlocked labor disputes in the public sector. Nevertheless, in doing so, there must be excluded from the arbitration process matters involving governmental policy determinations which involve an exercise of delegated police power.
Some of the cases reason that there is no improper delegation involved as the arbitrator is deemed a public official when performing functions which are public in nature. Town of Arlington v. Board of Concil. & Arbit., Mass., 352 N.E.2d 914 (Sup. Jud. Ct. 1976); City of Warwick v. Warwick Regular Firemen's Assn., 106 R.I. 109, 256 A.2d 206 (Sup. Ct. 1969). Others hold that legislative delegation is not illegal as long as adequate standards and safeguards are provided. City of Amsterdam v. Helsby, 37 N.Y.2d 19, 371 N.Y.S.2d 404, 332 N.E.2d 290 (Ct. App. 1975). Still other decisions hold that statutory provisions for compulsory arbitration of labor disputes in the public sector do not really entail the delegation of a governmental function at all, but rather in the exercise of that function, merely utilize a well-established procedure for the resolution of deadlocked labor disputes. State v. City of Laramie, 437 P.2d 295 (Wyo. Sup. Ct. 1968). See generally Annotation, "Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees," 68 A.L.R.3d 885 (1976). Some authorities are critical of the standards rule as applied to delegation of power. They suggest that procedural safeguards and judicial review are more *252 important than a requirement of standards. See 1 Davis, Administrative Law Treatise, § 2.15 at 148-151 (1958).
There are decisions to the contrary, such as Greeley Police Union v. City Council of Greeley, 553 P.2d 790 (Colo. Sup. Ct. 1976); Dearborn Fire Fighters, Local #412 v. City of Dearborn, 394 Mich. 229, 231 N.W.2d 226 (Sup. Ct. 1975); City of Sioux Falls v. Sioux Falls Firefighters, 234 N.W.2d 35 (S.D. Sup. Ct. 1975). However, most of them have been decided on the basis of specific constitutional provisions or statutory language.
In the instant case, defendant, citing Van Riper v. Traffic Tel. Workers Fed. of N.J., 2 N.J. 335 (1949), suggests that the arbitration clause under consideration is invalid because it lacks standards to govern the arbitrator in the exercise of the power delegated to him. Van Riper was decided almost thirty years ago.[3] In the interim, the widening use of arbitration in labor disputes, particularly in the public sector, has resulted in the development of standards and criteria which are inherent in the present-day process.
Thus, the arbitrator must act within the scope of the authority delegated to him. He must consider the public interest and the impact of his decision on the public welfare. He must act fairly and reasonably to the end that labor peace between the public employer and its employees will be stabilized and promoted. He must make findings which are adequate, and sufficient to support the award. N.J.S.A. 40:37A-96 should be construed as incorporating these inherent standards and criteria in its provisions for compulsory arbitration. See Avant v. Clifford, 67 N.J. 496, 549-554 (1976).
*253 In addition to these implied standards, there are explicit standards set forth in the statute. N.J.S.A. 40:37A-92 confines the scope of the collective bargaining to wages, hours, working conditions and welfare, pension and retirement provisions. As heretofore noted, N.J.S.A. 40:37A-94 and -95 specify protective conditions and benefits such as continuation of employment rights, privileges and benefits. Under N.J.S.A. 40:37A-96 the procedural rules and practices of the State Board of Mediation, promulgated pursuant to N.J.S.A. 34:13A-11, govern the arbitration. See N.J.A.C. 12:105-5.1 to -5.12 and N.J.A.C. 12:105-6.1 to -6.6, which establish procedures governing stenographic recording of hearings, representation, evidence, briefs and the form of award. The method of selection of the arbitrator or arbitrators is also provided for in N.J.S.A. 40:37A-96.
Although N.J.S.A. 40:37A-96 has no express requirement for judicial review of the arbitrator's award, we conclude that such review must be available if the statutory provision is to be sustained. The statute subjects the development Authority to compulsory and binding arbitration. Because it is compulsory, principles of fairness, perhaps even due process, require that judicial review be available to ensure that the award is not arbitrary or capricious and that the arbitrator has not abused the power and authority delegated to him.
Also, because the arbitration process is imposed by law, the judicial oversight available should be more extensive than the limited judicial review had under N.J.S.A. 2A:24-8 to parties who voluntarily agree to submit their dispute to binding arbitration. See Daly v. Komline-Sanderson Engineering Corp., 40 N.J. 175, 178 (1963). We conclude that when, as here, the arbitration process is compulsory,[4] *254 the judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record. This is the test normally applied to the review of administrative agency decisions and is particularly appropriate here. See City of Amsterdam v. Helsby, supra, 37 N.Y.2d at 38-41, 371 N.Y.S.2d at 417, 332 N.E.2d at 300-302 (Fuchsberg, J., concurring).
We find no merit in defendant-Authority's equal protection argument. Even assuming its standing to raise an equal protection issue, it is clear that the unique status of employees of a transportation facility taken over and operated by a County Improvement Authority serves as a rational basis for the statutory classification made and the imposition of unilateral compulsory arbitration.
In short, we uphold N.J.S.A. 40:37A-96 as a constitutional expression of legislative policy. We find therein, and in its companion statutory sections, standards, express and implied, to guide the arbitrator in the exercise of his authority. Adequate procedural safeguards have been established. We also conclude that the arbitrator's decision is subject to judicial review, the scope of such review being the same as that normally had in appeals from decisions of administrative agencies. Affirmed.
For affirmance  Chief Justice HUGHES, JUSTICES SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD  7.
For reversal  None.
NOTES
[1] Pursuant to Section 1609(c), the Authority and plaintiff union entered into an agreement dated August 21, 1969 for the preservation and continuation of employee rights, privileges and benefits, including the right to bargain collectively.
[2] N.J.S.A. 34:13B-1 et seq. also provides for compulsory arbitration of labor disputes between a public utility and its employees after seizure of the utility by the Governor in the public interest. As to the provision of this statute making it unlawful for employees of the utility to engage in strike activities after the Governor has taken possession of the utility, see Motor Coach Employees v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963).
[3] The original statute declared invalid for lack of standards in Van Riper, was amended by L. 1949, c. 308 so as to include specific standards. See N.J.S.A. 34:13B-27(b). As amended, the statute was upheld in N.J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354 (1950).
[4] Although the arbitration process herein is compulsory only as to defendant-Authority, the union and the Authority should stand on equal terms insofar as the right to judicial review and scope thereof are concerned.