266 N.J. Super. 501 (1993)
630 A.2d 318
JOHN M. FOX, MORRIS COUNTY SHERIFF, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
MORRIS COUNTY POLICEMEN'S ASSOCIATION, P.B.A. 151, DEFENDANT-APPELLANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1993.
Decided July 28, 1993.
*503 Before Judges PETRELLA, LONG and KEEFE.
Leon B. Savetsky argued the cause for appellant-cross-respondent Morris County Policemen's Association, P.B.A. 151 (Loccke & Correia, attorneys; Mr. Savetsky, on the brief).
Fredric M. Knapp argued the cause for respondent-cross-appellant Morris County Sheriff (Courter, Kobert, Laufer, Purcell & Cohen, attorneys; Mr. Knapp and Laura Lencses McLester, on the brief).
Gerald L. Dorf argued the cause for amicus curiae New Jersey State League of Municipalities (Mr. Dorf and Mitchell L. Dorf, on the brief).
Zazzali, Zazzali, Fagella & Nowak, attorneys for amicus curiae New Jersey State Policemen's Benevolent Association (Paul L. Kleinbaum, on the brief).
Kroll & Gaechter, attorneys for amicus curiae Fire Fighters Association of New Jersey (Raymond G. Heineman, Jr. and James P. Madden, on the brief).
Howard F. Appelt, II, Morris County Counsel, attorney for amicus curiae Morris County Board of Chosen Freeholders (Mr. Howard F. Appelt and Daniel W. O'Mullan, on the brief).
Genova Burns, attorney for amicus curiae New Jersey Association of Counties (Stephen E. Trimboli, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*504 Defendant Morris County Policemen's Association, P.B.A. 151 (P.B.A.),[1] appeals from a March 9, 1992 judgment of the Law Division which vacated the award of a Public Employment Relations Commission (PERC) appointed arbitrator following binding public sector interest arbitration to set the terms of the parties' next collective negotiation agreement. The arbitrator had selected the P.B.A.'s last final offer position on the economic issues in dispute. Plaintiff, John M. Fox, who was then Morris County Sheriff (Sheriff), cross-appeals from that aspect of the judgment which remanded the matter for a new arbitration before the same arbitrator.
On its appeal, the P.B.A. argues that the Law Division's decision does not accurately reflect the record and is based largely upon consideration of matters outside the record; the arbitrator's decision complied with the applicable statute and regulations; interest arbitration is an adversarial process in which each party has the obligation to submit its final offer and evidence in support thereof; and the award was supported by substantial credible evidence in the record.
The Sheriff argues in his cross-appeal that the matter should be remanded to a new arbitrator in order to protect the public interest and welfare.
The last collective negotiation agreement between the parties expired on December 31, 1990. Due to an impasse in negotiations for the succeeding contract the P.B.A. sought compulsory interest arbitration on January 22, 1991. After the arbitrator unsuccessfully attempted to mediate the dispute, he conducted interest arbitration hearings on July 29 and August 12, 1991. On the first date, both parties presented their "initial" final offers.
*505 It is not necessary to discuss at length the testimony, exhibits and the offers of the parties. The P.B.A.'s entire direct case consisted of offering forty-three documents into evidence, including such items as census data, activity reports, other interest arbitration awards, a memorandum of agreement dated March 1, 1991 as to a new contract between the Sheriff and the superior officers of the Corrections Bureau of the Sheriff's Office, a July 11, 1991 interest arbitration award selecting the Sheriff's offer for the 1990-1992 contract with the officers of the Correction Bureau of the Sheriff's Office, and other labor contracts involving various other counties and their sheriffs' officers, as well as certain municipal police contracts. There was no discussion of the contents of these documents and no witnesses were called by the P.B.A. before it rested.
The Sheriff's case consisted of approximately twenty-eight documents and the testimony of three witnesses. The first witness was a senior consultant with a fringe benefits consulting firm who testified about the cost of parts of the benefit package. The Morris County Director of Finance-County Treasurer (Treasurer) addressed the preparation of the budget and the fact that Morris County lost nearly $4.6 million in tax revenues in 1991 which led to the layoff of twenty-six full-time and eight part-time employees.
The Treasurer also testified about certain financial constraints on the County and concerns with how the County was going to meet a $100,000 deficit in its budget caused by an expected salary increase for another bargaining unit. The Treasurer had originally calculated a 6% salary increase for the Sheriff's officers which he felt was consistent with what had transpired in the County's other agreements in the law enforcement area. However, he indicated that figure would be jeopardized if the Sheriff needed to use some of those funds to satisfy another contract involving superior officers of the Sheriff's Department.
The final witness presented by the Sheriff at the July 29 hearing was the Morris County Director of Labor Relations and Chief Negotiator. The record was closed at the end of that *506 hearing and the matter was adjourned until August 12 when the parties were to make final revisions to their final offers. At the beginning of the August 12 hearing the arbitrator announced that no further evidence would be taken and reiterated that the record was closed. He rejected the Sheriff's attempt to "update" exhibit E-6, a one-page document prepared by the Treasurer outlining the annual fringe benefit calculation for Sheriff's officers, by replacing 1990 calculations with 1991 figures.[2] The figures showed the County's fringe benefit expenses as a percentage of the entire County payroll. The P.B.A.'s attorney objected on the ground that he could not cross-examine the document's author who was away on vacation, and because it should have been introduced before the record was closed. The arbitrator agreed.
The Sheriff also sought to have the P.B.A. agree to a one-paragraph stipulation of funds allocated to Local 151 for the 1992 budget. The proposed stipulation contained a figure that the Treasurer assertedly would have testified about, if present, based primarily on data he had testified to at the first hearing. The proposed stipulation was to the effect that the Board of Chosen Freeholders of Morris County had appropriated $2,891,782.76 toward the total economic compensation of the Sheriff's officers for 1992. The P.B.A. attorney refused to stipulate and objected to the entering of the calculation into evidence. He asserted lack of opportunity to cross-examine any witness and the fact that the record was closed. The arbitrator again sustained the objection.

I.
The parties recognize that the formal Rules of Evidence do not apply in arbitration proceedings. Significantly, there were statements by the arbitrator to the effect that he did not fully understand the Sheriff's offer for the final year of his proposed *507 two-year contract period. We consider it error in such circumstances for the arbitrator not to have clarified, or had the parties clarify, their respective positions, and error not to have afforded the Sheriff the opportunity to present the information at the August hearing. In any event, although the arbitrator purported to review the record in light of the statutory criteria, we are nonetheless satisfied that, as discussed herein, he essentially failed to make appropriate findings and conclusions under N.J.S.A. 34:13A-16g sufficient to sustain the arbitration award. Hillsdale P.B.A. Local 207 v. Borough of Hillsdale, 263 N.J. Super. 163, 622 A.2d 872 (App.Div. 1993).
The arbitrator rendered his written opinion and award on November 20, 1991, selecting the P.B.A.'s final economic offer[3] and rejecting both sides' non-economic proposals. His decision states initially: "The determination of the more reasonable last offer shall be based upon the criteria set forth in N.J.S.A. 34:13A-16g. *508 All eight criteria have been given consideration and due weight has been attributed in accordance with the issues in dispute and the particular facts of this record."
After summarizing the parties' respective positions, the arbitrator questioned why the Sheriff had not made the same offer here that had ultimately prevailed in an arbitration involving the corrections officers. He commented that such an offer "would have been judged most reasonable." Additionally, as noted, the arbitrator seemed perplexed by the employer's offer for 1992.
With respect to the criteria in N.J.S.A. 34:13A-16g, the arbitrator grouped the public interest, the lawful authority of the employer and financial impact under the umbrella of "ability-to-pay." He concluded, based on the Treasurer's testimony, that the County had sufficient funds in the budget calculation, assertedly taking into consideration the CAP Law, to pay at least the 6% increase for 1991 sought by the P.B.A. The arbitrator assumed that the Treasurer's qualified answer at the hearing of the availability of that funding (being contingent on how another bargaining unit's award was to be paid) must be accepted as unqualified since the record did not show that the funds were allocated elsewhere. In addition, the arbitrator found that the public employer's efforts with other bargaining units supported his conclusion that the County had the ability to pay the 6% increase sought by the P.B.A. for 1991.
The arbitrator applied the same "ability to pay" reasoning for 1992. Analyzing the split year increases sought by the P.B.A. in terms of costs over the three years it sought, the arbitrator calculated that the cost impact would be on average 6.06% from 1991 to 1993. He rejected the Treasurer's argument that the CAP Law would prevent the County from funding any award for 1992 higher than 3.5%. Opining that because the budgetary process for that year was still fluid and efforts were being made to cut the costs of running the government, the arbitrator apparently believed the County would find a way to pay. Indeed, he found "no hard evidence" that would indicate that the County could not *509 pay the award to the P.B.A., especially since the cost increase brought on by the 1992 award would only be 5.06% (the split year increase rolls 2.06% of the 1992 cost increase into 1993). As to 1993, the arbitrator felt that there was enough time for the public employer to figure out how to pay for that award in that year's budget.
The arbitrator also asserted that the earlier award in the Morris County corrections officers matter supported the P.B.A.'s proposal here because, as the public employer successfully argued there, it would "maintain internal comparability" and foster stability between the law enforcement units.
As to comparability, the arbitrator felt that the award involving the corrections officers was significant because it involved the same public employer, similar rank of the respective units' members, and was close in time. After noting the similarity in the cost increases in the public employer's offer in that case and the P.B.A.'s demand here, the arbitrator stressed that the top pay rates would be the same if the P.B.A.'s proposal was accepted. On the longevity pay and insurance contribution issues, the arbitrator initially stated that he favored the public employer's position, but that the P.B.A.'s "offer" was still acceptable because it did not seek the type of stipend (a form of benefit improvement in exchange for the "givebacks") given to the corrections officers.
The County's 5% offer for 1991 conflicted, in the arbitrator's view, with its voluntarily adopted "clear 6% trend." Significantly, the arbitrator believed the 1992 proposal was incalculable at the time due to the inclusion of so many variables. The arbitrator remarked that the public employer's 1992 salary position carried "absolutely no compelling basis for such an extreme divergence from the norm" of other law enforcement contracts throughout the State. Although the arbitrator said he did not give them determinative weight, he drew favorable comparisons between the P.B.A.'s proposals and contracts of other Morris County law enforcement units, non-law enforcement units in the County, and with contracts of Sheriff's officers from other counties.
*510 As to overall compensation, the arbitrator was of the view that the P.B.A. unit enjoyed a sound overall package which would remain normal under the new proposal. As such, he felt this criteria did not rate particular weight. He also stated that the cost of living criterion did not warrant determinative weight because he did not see the 1990 consumer price index data as clearly pointing to one side's offer being more reasonable for 1991, nor applicable for 1992 or 1993.
According to the arbitrator, selection of the P.B.A.'s offer would protect "the internal comparability of the salary scales" between the Sheriff's officers and the corrections officers, and this in turn would satisfy the criteria of continuity and stability of employment.
The arbitrator concluded:
The overall analysis of the economic packages provides a clear determination that the P.B.A. final offer is more reasonable. To summarize, there is convincing evidence that that position falls within the Employer's ability to pay. It is strongly supported by comparative evidence and it is squarely in line with the concept of continuity and stability of employment. Finally, and most compelling, is the inescapable conclusion that the Employer's final offer is particularly flawed, especially when viewed in direct comparison with the Employer's successful final offer in the Corrections Officers case. The findings herein acknowledge the negative impact of the P.B.A.'s failure to include the Health Insurance and Longevity positions which were generally achieved by the County with other units. However, the P.B.A.'s elimination of other benefit improvements, which frequently accompanied the givebacks, tempers the ultimate weight attributable to this shortcoming. In conclusion, the P.B.A.'s final offer economic package shall be awarded herein as more reasonable under the statutory criteria.
All non-economic proposals were rejected.
The Sheriff sought vacation of the arbitrator's award in the Law Division and the P.B.A. sought its enforcement. On January 31, 1992 Judge Stanton rendered an oral opinion vacating the arbitration award and remanding the matter to the same arbitrator for a new arbitration. The judge was of the opinion that:
the parties and the arbitrator, in silence, decide not to treat as being relevant any real analysis of the interests and welfare of the public, any real analysis of comparable wages and benefits, or of wages and benefits generally for people in public employment or private employment, any real analysis of the financial impact on the governing unit, its residents and taxpayers. They just don't pay any *511 attention to them. And there was no attention paid to them, no real attention paid to them in this arbitration.
Furthermore, in light of the public interests at stake in public sector interest arbitrations, Judge Stanton refused to accept the argument that the parties' failure to introduce evidence on one or more of the statutory criteria justifies an arbitrator's omission of discussion or consideration thereof. The judge emphasized that the difficulties encountered in performing the comparisons (with other public employees as well as private employees in general), along with consideration of factors like the public's interest and welfare and the financial impact of the award, all of which are called for by the statute, do not mean that such comparisons and factors may be ignored.
Judge Stanton's review of the record persuaded him that, contrary to the statute's requirement, there was no serious consideration given to the financial impact of the award on the public employer, the County's residents and taxpayers, or to the public's interest and welfare, or to comparisons with private employment and other public employment. The judge commented that the interest arbitration process has become "fundamentally unrealistic" in that law enforcement personnel are receiving salaries which are comparatively high, with no justification in the arbitration decisions other than comparisons with other law enforcement salaries.
The judge also noted that public employers generally fail to present evidence or discuss factors other than comparability, and neglect to discuss actual dollar figures rather than simply percentages. Judge Stanton stressed the importance of real dollar figures by pointing to the salaries of Council Six County employees whose annual salaries start at $14,000 or $15,000, with no step process, as compared to the starting salaries for Sheriff's officers who enjoy a step program. The judge felt that the interest arbitration system was meant to be fair not only to the law enforcement officers, but to the public interest and the interests of other public employees and private employees.
*512 Opining that the statute calls for difficult and thoughtful comparisons to be performed, especially in light of the recession and constraints on the public treasury, Judge Stanton concluded that the public interests implicated in this award militated against allowing it to stand merely because the public employer failed to better prepare its case. The parties were considered to have been reading most of the statutory criteria out of the statute. Hence, he vacated the arbitrator's decision and award and remanded for a new arbitration.
Judge Stanton initially believed that the matter should be remanded to a new arbitrator, but he changed his view based on the P.B.A.'s attorney's argument that the process could best be expedited by returning the case to the same arbitrator and simply supplementing the record in accordance with the court's January 31, 1992 oral opinion.[4] The Sheriff's attorney stated his concern about whether the arbitrator would be able to overcome certain judgments that he had made, but the judge nevertheless felt this arbitrator would be able to take "a fresh look" and fairly review the new information and data the parties wish to introduce.

II.
The isolated comments selected by the P.B.A. as evidence of Judge Stanton referring to matters outside of the record, especially his experiences in reviewing interest arbitration awards, are dicta. Moreover, the judge's reference to information "extrinsic to the award" was not contrary to law or inappropriate. See Kearny P.B.A. Local 21 v. Town of Kearny, 81 N.J. 208, 219-220, 405 A.2d 393 (1979); N.J.S.A. 34:13A-16f(5). Of course, the judge is entitled to take judicial notice of appropriate matters under Evid.R. 9, and this includes not only laws and court proceedings but notorious facts. See Evid.R. 9(2)(d) and (e). The bulk of the judge's opinion reveals his analysis of the award in light of the criteria of N.J.S.A. 34:13A-16g. In contrast to the arbitrator's *513 decision, which contains fundamental misperceptions on how section 16g should be applied, Judge Stanton's conclusions are supported by the record.
The applicable legal principles involved are discussed in our recent decision in Hillsdale P.B.A. Local 207 v. Borough of Hillsdale, supra (263 N.J. Super. 163, 622 A.2d 872), which was decided after Judge Stanton's opinion. Contrary to the P.B.A.'s arguments, the arbitrator's decision did not comply with the statute and regulations. The parties and the arbitrator must apply the statute in accordance with its terms and spirit. Nor can the "adversarial nature" of public sector interest arbitration justify requiring the public employer paying for an arbitration award selected in part because of deficiencies in the case presented by the parties. See Hillsdale, supra (263 N.J. Super. at 184-185, 622 A.2d 872) (rejecting "waiver" argument). Paramount public interests make it inequitable to order the governing unit (and in turn the residents and taxpayers) to be bound to an award and expend public funds merely because the arbitrator and parties failed to adequately comply with and address the statutory criteria beyond simply comparability with other law enforcement units and the non-statutory and abstract concept of the public employer's "ability to pay."[5]
*514 Interest arbitration in the public sector is fundamentally different from ordinary private sector arbitrations. Private sector arbitration is essentially contractual and consensual. Moreover, arbitration in the private sector is not necessarily imbued with a public interest, nor does it have ramifications as a potential infringement on the responsibilities and powers of elected governing and policy-making bodies and the usual manner in which government entities operate under constitutional and statutory authority. See Hillsdale, supra (263 N.J. Super. at 181-186, 622 A.2d 872). Such differences justify more extensive judicial oversight of public sector interest arbitration. See Division 540, Amalgamated Transit Union v. Mercer County Improvement Auth., 76 N.J. 245, 253-254, 386 A.2d 1290 (1978).
An arbitrator in the public sector should not be limited to considering only factors which the parties choose to produce evidence on, as this may lead to a choice between two unreasonable offers. Cf. Newark Firemen's Mutual Benevolent Ass'n v. Newark, 90 N.J. 44, 53, 447 A.2d 130 (1982). Moreover, N.J.A.C. 19:16-5.7(d) specifically authorizes arbitrators to request additional evidence necessary to arrive at a "reasonable determination of the issues." That was not done here, despite the arbitrator's concession that he did not really understand the public employer's position for the 1992 contract year.
We acknowledge that the arbitrator's opinion in this matter was more thorough than that of his counterparts in Hillsdale, supra (263 N.J. Super. 163, 622 A.2d 872). Nonetheless, the award is subject to vacation under N.J.S.A. 34:13A-16f(5) for failure to adequately consider the statutory factors of 16g,[6] thereby *515 amounting to "undue means," see N.J.S.A. 2A:24-8a; Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 494, 610 A.2d 364 (1992) (plurality) (vacation of arbitration award based on undue means contemplates situation where arbitrator intended to comply with law, but was clearly mistaken in application of the legal rule) and for refusing to accept pertinent and material evidence offered by the Sheriff.[7]See N.J.S.A. 2A:24-8c.
*516 With respect to the statutory factors, the arbitrator's first error was in grouping together "[t]he interests and welfare of the public," 16g(1), "[t]he lawful authority of the employer," 16g(5), and "[t]he financial impact on the governing unit, its residents and taxpayers," 16g(6), under the rubric of a nonstatutorily based category dubbed "ability to pay." This new "ability to pay" label is not really a criterion, but a loose label which might be applied as a conclusion to an analysis of 16g(5). The grouping of three of the statute's eight factors under the vague "ability to pay" label effectively renders two of the criteria of 16g mere surplusage. It also seriously undervalues the public's interests and welfare, factors which can fairly be said to always be relevant since the arbitrator's award may have a great impact on a governing body's policy decisions. See Hillsdale, supra (263 N.J. Super. at 189, 622 A.2d 872).
In determining that the County had the ability to pay the P.B.A.'s demand, the arbitrator did not explain why the salaries of Sheriff's officers are entitled to such a priority in the overall budget vis a vis other functions, plans and concerns of residents and taxpayers.[8]See N.J.S.A. 34:13A-16g(6). Essentially, the arbitrator left it to the County to figure out how to pay the award for 1992 and 1993, notwithstanding that no evidence was presented *517 as to 1993,[9] a year in which the CAP limit is 1.5%. The arbitrator's cryptic conclusion that there was sufficient time for the public employer to figure out how to fund the P.B.A.'s demand for 1993, when the true cost of the split year increase of 1992 will have to be dealt with, is no answer at all. That rationale would support a demand for even a 100% salary increase, as it could be said that somehow the County could find a way to fund it, such as through cuts in other services or increased taxation in assessments payable by the municipalities in the County. In any event, the arbitrator's selection of the P.B.A.'s demand for 1993, with his concession that "an analysis cannot be applied for that distant year," is questionable and unsupported by substantial evidence in the record.
The arbitrator's opinion also implies, without authority, that it is the public employer's burden to prove that it would be unable to pay the demand sought by the P.B.A. Cf. Hillsdale, supra (263 N.J. Super. at 194, 622 A.2d 872). How this could be accomplished when the arbitrator himself considered the 1992 budget "fluid" and the 1993 budget too distant to predict is questionable.
As for 16g(2), the statute requires a comparison with other employees, both public and private. No one in the instant case considered comparisons with private sector employment. In fact, the Sheriff argued to Judge Stanton that comparison with private employment is unnecessary. The judge correctly called for a "thoughtful" comparison to be attempted, even if it proves difficult.
The arbitrator categorized an arbitration award involving the corrections officers as having "enormous importance in this case" and expressed his unwillingness to select the public employer's last offer because to do so would, in his words, "undo that salary scale established ... through the ... award[] of the [public] Employer's last offer" in that other arbitration. Over-reliance on *518 maintaining parity with the corrections officers, however, promotes whipsawing, as there will be a constant need to increase each unit's wages in the unending quest for parity. Despite his claim that comparability in general was "not given determinative weight in this proceeding," the only realistic conclusion to be drawn from a reading of the arbitrator's opinion is that he was almost entirely influenced by maintaining parity with the corrections officers.
In addition, with the exception of the arbitrator's discussion of the corrections officers, he refers only to percentage increases, rather than actual dollar amounts, when making comparisons with other counties' sheriffs' officers and law enforcement personnel. This is not what the statute specifies. N.J.S.A. 34:13-16g(2) requires a "[c]omparison of the wages, salaries, hours, and conditions of employment." Judge Stanton was correct in calling for a discussion of actual dollar figures.
Subsection 16g(7) requires consideration of the cost of living. The arbitrator found that this factor "does not warrant determinative weight in this matter," mostly because the current "data cannot be projected forward to be reliably applied to 1992 and 1993." Thus, the arbitrator sub silentio wrote 16g(7) out of the statute. Without powers of premonition, the cost of living for future years can never be foretold exactly. Thus, under the arbitrator's mistaken reasoning, projections need not be considered. However, there is no reason, for example, that a comparison of salary increases and the consumer price index could not have been taken into account from 1983 to 1990 and a reasonable projection made.[10]
Subsection 16g(8) concerns the continuity and stability of employment, including seniority rights. Due to the public employer's deficient presentation of this criterion, the arbitrator's decision *519 focused upon this factor only in terms of internal comparability with the corrections officers' bargaining unit. This is a misreading of the statute, turning 16g(8) into no more than a reworded version of 16g(2)(a). Even if this view of "continuity and stability" were to be credited, no attention was paid to the County's overall salary structure  that is, the effect on other County employees. In addition, consideration should have been given to the high unemployment level in this State at the time, as well as the low level of turnover in law enforcement and the virtual absence of unemployment among police, if that is indeed the fact. Mention of a longevity pay differential was apparent in the opinion, but this relevant matter was primarily addressed in conjunction with comparability to the corrections officers whose longevity differential had been grandfathered in exchange for receiving an annual stipend.
Finally, there was no evidence presented to justify the P.B.A.'s demand that the public employer pay for any doctor's bills attributable to an officer's need for a doctor's letter upon use of sick leave.[11] This illustrates an inherent problem with interest arbitration: the arbitrator is "stuck" with a choice between the parties' respective last "offers" on economic issues as a single package, N.J.S.A. 34:13A-16d(2), unless otherwise mutually agreed. See Hillsdale, supra (263 N.J. Super. at 187-188, 196, 622 A.2d 872).

III.
After deciding to vacate the arbitration award here, Judge Stanton's initial inclination was to remand the matter for a new arbitration before a different arbitrator. However, he changed his mind based on the arguments of the P.B.A.'s attorney regarding the need to expedite the process so that the Sheriff's officers could get a new contract quickly without the need to "reinvent the *520 wheel."[12] The judge reasoned that much like when judges are asked to take a "fresh look" at a case when a matter is remanded to them, a professional arbitrator must be presumed to be able to do the same. Hence, he remanded the matter to the arbitrator with directions to accept whatever information and data the parties wished to introduce in accordance with his oral opinion. The Sheriff cross-appealed from that aspect of the court's judgment.
In Hillsdale, supra (263 N.J. Super. at 195-196, 622 A.2d 872), we remanded for "a new arbitration hearing before a new arbitrator." This discretionary remedy was appropriate because the arbitrators in those hearings were simply not careful in their analysis of the statutory criteria. The arbitrator's opinion here showed a more careful analysis. Presumably, he will be able to render a fair and impartial decision on the merits with proper adherence to all of the statutory criteria.
Under N.J.S.A. 2A:24-8, courts possess discretionary power upon vacation of an arbitration award to "direct a rehearing by the arbitrators." In La Stella v. Garcia Estates, Inc., 128 N.J. Super. 173, 319 A.2d 274 (App.Div. 1974), rev'd on other grounds, 66 N.J. 297, 331 A.2d 1 (1975), we noted the general rule that upon vacation of an arbitration award "a court may, in its discretion, either order the matter resubmitted to arbitration, which includes the power to require the appointment of new arbitrators, or may decline to order resubmission, thus leaving the parties to judicial resolution of the dispute." 128 N.J. Super. at 177-178, 319 A.2d 274.
Eleven years later, in Manchester Township Bd. of Educ. v. Carney, Inc., 199 N.J. Super. 266, 489 A.2d 682 (App.Div. 1985), we modified a decision to vacate an arbitration decision regarding construction defects in work performed in a high school building where the panel of arbitrators refused to hear rebuttal testimony *521 offered by the local school board. The Chancery Division found that the arbitrators had acted improperly in refusing to accept pertinent evidence before the hearing was closed and remanded to let the American Arbitration Association decide whether the same arbitrators should participate. Id. at 271, 489 A.2d 682. On appeal we concluded that new arbitrators were required because "[h]aving weighed the evidence and reached a conclusion before all the evidence was heard it can hardly be argued that the same arbitrators could have an open mind in reconsidering their determination after hearing the rebuttal witnesses." Id. at 282, 489 A.2d 682.
The Sheriff and various public-entity-oriented amici (the New Jersey Association of Counties and the Morris County Board of Chosen Freeholders) argue in favor of appointment of a new interest arbitrator to protect the public interest and welfare by considering all of the pertinent and relevant information in light of the statutory criteria of N.J.S.A. 34:13A-16g. They contend that the arbitrator ignored certain of the criteria and rejected much of the testimony of the Sheriff's witnesses (especially that of the County's health plan consultant) regarding the allegedly dire financial straits of the County.
Although the question is close, we believe Judge Stanton did not abuse his discretion in remanding to the same arbitrator. Unlike Manchester, the hearing here was ostensibly closed when the employer tried to introduce new testimony. Thus, this situation is slightly different and does not as clearly call for appointment of a new arbitrator. The arbitrator here did not openly state that he found any of the Sheriff's witnesses not to be credible. Cf. In re Guardianship of R., G. and F, 155 N.J. Super. 186, 382 A.2d 654 (App.Div. 1977) (relied upon by the Manchester Township court). Instead, the implication is that he found the Sheriff's offer to be less reasonable under his misapprehension of how to apply the criteria of 16g.
We are willing to presume, until shown to the contrary, that under the circumstances of this case the arbitrator will be able to *522 take a fresh look at this matter and reach a fair and impartial decision in accordance with the statute and this decision.
Affirmed.
NOTES
[1] Defendant is the recognized majority representative of the Sheriff's officers employed by the Morris County Sheriff's Office.
[2] The 1990 calculations were admitted into evidence without objection at the July 29, 1991 hearing. It would appear that if the 1991 figures were available at the first hearing they probably would have gone into evidence in the same manner.
[3] Briefly, the P.B.A.'s final "offer" was a three year contract (January 1, 1991 to December 31, 1993) with pay increments as follows:

Wage Increases: across the board for each rank, step and position, calculated upon the rate preceding the pay increase
Effective January 1, 1991  6%
Effective January 1, 1992  3%
Effective July 1, 1992  4%
Effective January 1, 1993  3%
Effective July 1, 1993  4%
The Sheriff's two year contract offer had three economic components. The first component sought to grandfather longevity payments so that only employees hired before January 1, 1991 would remain eligible to receive the added percentages, consistent with the provisions of the expired contract, which are geared to length of service; employees hired after that date would not receive longevity benefits. The second economic proposal involved modification of the prior contract's hospital and medical insurance provision.
The third component concerned wages and economic benefits, including step movement, base annual salary, college credits, overtime, detective allowances, merit pay and unused sick leave credits upon retirement. The Sheriff offered a 5% wage increase effective January 1, 1991. For 1992, the Sheriff offered a 3.5% increase in the total package of salary and wage, which he asserts should be understood as providing for a 4% wage increase.
[4] Obviously this did not take into account the P.B.A.'s decision to appeal.
[5] The system of compulsory interest arbitration for public police and fire department negotiations came about as a result of the amendment of the New Jersey Employer-Employee Relations Act by L. 1977, c. 85. Thus, the Legislatures's original policy statement in the act is highly relevant here:

It is hereby declared as the public policy of this State that the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes, both in the private and public sectors; that strikes, lockouts, work stoppages and other forms of employer and employee strife, regardless where the merits of the controversy lie, are forces productive ultimately of economic and public waste; that the interests and rights of the consumers and the people of the State, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such public and private employer-employee disputes under the guidance and supervision of a governmental agency will tend to promote permanent, public and private employer-employee peace and the health, welfare, comfort and safety of the people of the State. To carry out such policy, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination. [N.J.S.A. 34:13A-2 (emphasis supplied].
[6] N.J.S.A. 34:13A-16g reads as follows:

The arbitrator or panel of arbitrators shall decide the dispute based on a reasonable determination of the issues, giving due weight to those factors listed below that are judged relevant for the resolution of the specific dispute:
(1) The interests and welfare of the public.
(2) Comparison of the wages, salaries, hours, and conditions of employment of the employees involved in the arbitration proceedings with the wages, hours, and conditions of employment of other employees performing the same or similar services and with other employees generally:
(a) In public employment in the same or similar comparable jurisdictions.
(b) In comparable private employment.
(c) In public and private employment in general.
(3) The overall compensation presently received by the employees, inclusive of direct wages, salary, vacations, holidays, excused leaves, insurance and pensions, medical and hospitalization benefits, and all other economic benefits received.
(4) Stipulations of the parties.
(5) The lawful authority of the employer.
(6) The financial impact on the governing unit, its residents and taxpayers.
(7) The cost of living.
(8) The continuity and stability of employment including seniority rights and such other factors not confined to the foregoing which are ordinarily or traditionally considered in the determination of wages, hours, and conditions of employment through collective negotiations and collective bargaining between the parties in the public service and in private employment.
[7] As mentioned supra, the Sheriff sought to introduce certain evidence concerning fringe benefit calculations for 1991 as an element of the entire county payroll and a one-paragraph document purporting to set forth the amount of money allocated to the Sheriff's officers for 1992 under the CAP Law. Sustaining the P.B.A.'s objection, the arbitrator refused to admit those documents in part because of the P.B.A.'s inability to cross-examine the author. According to the Sheriff and the public-entity oriented amici, these documents would have facilitated calculation of the Sheriff's offer for 1992, thus qualifying as pertinent and material evidence. See N.J.S.A. 2A:24-8c. The Rules of Evidence are not to be strictly applied in arbitration proceedings. See generally Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227, 230 A.2d 521 (App.Div. 1967); N.J.S.A. 52:14B-10 (evidentiary rule for contested cases under the APA); N.J.A.C. 1:1-15.1 (the general evidentiary rule for administrative proceedings). Consideration of the offered documentary evidence apparently would have illustrated that a definite increased amount was allocated for 1992, but that the specific designation of the allocated increases had not yet been determined. The certification presented by the Sheriff to Judge Stanton clarified the possible outcome for 1992 in terms of a 4% salary increase. Of course, it would have been in the public employer's best interest to have presented its offer in an understandable manner.
[8] The arbitrator simply reiterated the Treasurer's testimony to the effect that "there were ongoing efforts to reduce the cost of running county government without a loss of efficiency or reduction in services." The implication here is that the Sheriff's officers have first priority on any funds saved as a result of cutting the cost of running the County, inferring that all cuts must inure to the benefit of the bargaining unit. No justification is provided for such reasoning.
[9] It was conceded at oral argument that there was no evidence presented as to 1993. Apparently, this year became a part of the award because it was part of the package which constituted the P.B.A.'s "final offer," i.e., its demand.
[10] The Sheriff claims that a 30% difference (in favor of the Sheriff's officers) would be shown.
[11] This was the second economic component of the P.B.A.'s "offer."
[12] Of course, this need for expediting things took a back seat when an appeal was filed by the P.B.A.