**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1778-17T3

BRETT D. HOLEMAN,

     Plaintiff-Appellant,

v.

FREEHOLD REGIONAL HIGH
SCHOOL DISTRICT BOARD
OF EDUCATION,

     Defendant-Respondent.

_____

Argued November 13, 2018 – Decided November 29, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000128-17.

James R. Zazzali, Jr. argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; James R. Zazzali, Jr., of counsel and on the briefs; Kaitlyn E. Dunphy, on the briefs).

Jeffrey R. Caccese argued the cause for respondent (Comegno Law Group, PC, attorneys; Mark G. Toscano and Jeffrey R. Caccese, of counsel and on the brief).

PER CURIAM

Dr. Brett D. Holeman (plaintiff) appeals from an October 31, 2017 order denying his motion to vacate an arbitrator's award, which upheld tenure charges. We affirm.

Plaintiff began working as a school psychologist for the Freehold Regional High School District Board of Education (the Board) in 2004, and was tenured in 2007. In the spring of 2016, there was a "breakdown" between plaintiff and the staff and administration. Because of plaintiff's alleged mention of steroids and raising his voice during a counseling session with a student, the Board suspended plaintiff and required him to undergo fitness for duty examinations, including drug testing and a psychological evaluation.

On April 25, 2016, the Board sent plaintiff a memorandum listing six allegations made against him. In the memorandum, the Board advised plaintiff that he (1) "[e]ngaged in inappropriate behavior (. . . comments, language and expressions), including the use of profanity, reference to sexual activity in front of students[, and] the use of extreme volume with students and parents within a confidential counseling environment;" (2) "[m]ade repeated derogatory and demeaning remarks about and to colleagues and supervisors;" (3) "[e]ngaged in erratic and concerning behaviors that intruded into and unnecessarily disrupted

the workplace of colleagues;" (4) "[j]eopardized the State mandated testing environment to which he was assigned;" (5) [d]emonstrated an overall lack of respect for authority;" and (6) "[d]isregarded the [Board]'s organizational plan and failed to observe or use proper chain of command when raising issues or concerns."

In August 2016, the Board brought tenure charges against plaintiff and expressed "concerns" with plaintiff's "erratic, volatile, and overall troubling behavior." It detailed "a series of inappropriate and unethical conduct and behavior that dates back as far . . . as [plaintiff's] initial application for employment." A settlement conference was unsuccessful, so arbitrator Stephen J. Rosen conducted twelve hearings between January and March 2017. The arbitrator rendered the Arbitration Award (the Arbitration Award or the Award) on May 12, 2017, and the Board then terminated plaintiff.

Plaintiff filed an order to show cause seeking to vacate the award. Judge Del Bueno Cleary conducted oral argument, and found that the arbitrator's decision applied the correct standard and did not violate N.J.S.A. 2A:24-8, the evidence established that plaintiff engaged in misconduct, termination was appropriate, and there was no violation of public policy.

3

On appeal, plaintiff argues that we should vacate this public sector arbitration award as it was procured by undue means; the arbitrator exceeded or imperfectly executed his powers in applying the proper standard and burden of proof; the Award was not based on substantial credible evidence; and the Award was inconsistent with public policy.

"Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ibid. (quoting Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

In reviewing the order under review, we owe no special deference to the judge's interpretation of the law and the legal consequences that flow from the established facts. Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We thus review the judge's decision on a motion to vacate an arbitration award de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013).

N.J.S.A. 2A:24-8(a) states that, "[t]he court shall vacate the award . . . [w]here the award was procured by corruption, fraud or undue means."

A-1778-17T3

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 203 (2013) (alteration in original) (quoting Office of Emp. Relations v. Commc'ns Workers, 154 N.J. 98, 111 (1998)). While New Jersey courts generally favor arbitration awards, a court may vacate a public sector arbitration award if it violates substantive law or public policy. In re City of Camden, 429 N.J. Super. 309, 330-31 (App. Div. 2013). See also Jersey City Educ. Ass'n, Inc. v. Bd. of Educ., 218 N.J. Super. 177, 188 (App. Div. 1987); Commc'ns Workers of Am., Local 1087 v. Monmouth Cty. Bd. of Soc. Servs., 96 N.J. 442, 453-55 (1984).

To vacate the award, the court "must consider more than whether a mere mistake occurred." Minkowitz, 433 N.J. Super. at 150. Instead,

> the arbitrators must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award. In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.
>
> [Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 357 (1994) (citation omitted).]

A-1778-17T3

Moreover, "undue means" does "not include situations . . . where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible." Local No. 153, Office & Prof'l Emps. Int'l Union v. Tr. Co. of New Jersey, 105 N.J. 442, 450 n.1 (1987).

N.J.S.A. 2A:24-8(d) states that, "[t]he court shall vacate the award . . . [w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." Plaintiff claims that the arbitrator exceeded his powers by, instead of using the standard for "conduct unbecoming," creating a "self-styled" standard – the "irrevocable differences" standard – in violation of N.J.S.A. 2A:24-8.

The phrase "conduct unbecoming" has been described as an "elastic one." Karins v. City of Atlantic City, 152 N.J. 532, 554 (1998) (quoting In Re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960)). The Court has defined unbecoming conduct as conduct "'which adversely affects the morale or efficiency of the [department]' or 'has a tendency to destroy public respect for [government] employees and confidence in the operation of [public] services.'" Ciripompa, 228 N.J. at 13 (alterations in original) (quoting In re Young, 202 N.J. 50, 66 (2010)).

> [A] finding of unbecoming conduct need not be predicated upon the violation of any particular rule or

regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct."

[Id. at 13-14 (citation and internal quotation marks omitted).]

In a school tenure case, "the touchstone is fitness to discharge the duties and functions of one's office or position." In re Grossman, 127 N.J. Super. 13, 29 (App. Div. 1974). "A charge of unbecoming conduct requires only evidence of inappropriate conduct by teaching professionals. It focuses on the morale, efficiency, and public perception of an entity, and how those concerns are harmed by allowing teachers to behave inappropriately while holding public employment." Ciripompa, 228 N.J. at 14. As to incapacity, this court has explained that "the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, [which] cannot be doubted." Grossman, 127 N.J. Super. at 30.

The judge determined that the arbitrator reviewed all of the evidence, including the testimony, and made findings of fact and applied the appropriate legal standard. She explained that the arbitrator "found that the vast majority of the Board's allegations were credible, and upheld the Board's tenure charges."

7

As this decision was predicated on the twelve days of hearing and the arbitrator's extensive credibility findings, findings of fact, and conclusions of law, the Award was not procured by "undue means" and the judge properly decided not to vacate the Award.

Moreover, the judge found that plaintiff failed to provide any relevant evidence to suggest that the arbitrator exceeded or imperfectly executed his powers, thereby a mutual final and definite award was not made. She said, "the arbitrator was fully aware of the nature of the case. It is clear that he did not apply the incorrect legal standard." The judge concluded that, "[t]he arbitrator considered that . . . [plaintiff] was a school psychologist and that his actions were unbecoming. He found that by clear and convincing evidence. It's also clear to the [c]ourt that progressive discipline would not be proper in this case."

As to plaintiff's claim of a lack of substantial credible evidence, he argues that the arbitrator's conclusory statements show that although the arbitrator "sustained the charges overall, it is unclear which of the numerous allegations he was sustaining and what evidence he credited in order to make those findings." Our Supreme Court has held that where "the arbitration process is compulsory, the judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record." <u>Div.</u>

540, Amalgamated Transit Union v. Mercer Cty. Improv. Auth., 76 N.J. 245, 253-54 (1978) (footnote omitted).

"Under the reasonably debatable standard, a court reviewing [a public-sector] arbitration award may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Borough of E. Rutherford, 213 N.J. at 201-02 (alteration in original) (citations and internal quotation marks omitted).

Our Supreme Court has explained that, "for purposes of judicial review of labor arbitration awards, public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the common weal." N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 295 (2007). The Court has also stated that:

> If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted. The judiciary's duty to provide an enhanced level of review of such arbitration awards is discharged by a careful scrutiny of the award, in the context of the underlying public policy, to verify that the interests and objectives to be served by the public policy are not frustrated and thwarted by the arbitral award.
>
> [Weiss v. Carpenter, 143 N.J. 420, 443 (1996).]

A-1778-17T3

But, "if the arbitrator's resolution of the public-policy question is not reasonably debatable, and plainly would violate a clear mandate of public policy, a court must intervene to prevent enforcement of the award." Ibid. "Reflecting the narrowness of the public policy exception, that standard for vacation will be met only in 'rare circumstances.'" N.J. Tpk. Auth., 190 N.J. at 294 (quoting Tretina Printing, Inc., 135 N.J. at 364).

Here, there is sufficient credible evidence in the record by which the arbitrator could have decided that plaintiff engaged in unbecoming conduct. Plaintiff's former colleague testified that she had concerns referring future students to plaintiff due to his inappropriate actions toward students. A Freehold Regional Education Association (the Association) representative stated that plaintiff previously "got in her face and seemed very confrontational." The Association president had to be called in to meetings because plaintiff's co-workers were "afraid" of him and "didn't know exactly what he was going to do." Several of plaintiff's former colleagues contacted the principal with their concerns regarding plaintiff. Some of plaintiff's former colleagues testified that he made them feel uncomfortable on different occasions. The Director of Personnel for the Board testified that she felt that plaintiff's behavior was "malicious." Plaintiff's former supervisor testified that she feels that plaintiff

"is a liar, and . . . an unprofessional staff member as a whole." The guidance counselor testified that a student confided in her that plaintiff used a derogatory term to refer to the student's ex-girlfriend and that plaintiff encouraged the student to "go off to college" and have sex with "[forty] girls." He also allegedly recommended that the student read a "profanity-filled self-help book." Students confided in other administrative employees that they no longer felt comfortable working with plaintiff. Plaintiff sent emails to students calling them "baby," his "little girl," and allowing them to call him "luv." He received an email from one student inquiring whether plaintiff wanted the student to "mail or email [him] a picture." He responded that either would be fine. Plaintiff offered to take another student out to lunch at the on-campus student culinary restaurant during the week with his daughters. He also frequently used profanity in email correspondences with students.

In his discussion and findings, the arbitrator explained his reasoning for each of the six charges. The arbitrator ended his findings by stating that, "of particular concern are the repercussions generated by [plaintiff]'s behavior. The statements and testimony contained in the hearing record show a breakdown in [plaintiff]'s relationship with colleagues and administrators." He concluded that, "[i]t is important that the guidance department, teaching staff and

administration maintain a cooperative relationship. The hearing record reveals the relationship between [plaintiff] and others had been damaged." The judge concluded that the arbitrator found the "vast majority" of the Board's allegations to be credible. Thus, the Award was based on substantial, credible evidence and should not be vacated.

Plaintiff claims that the arbitrator's decision not to use progressive discipline runs counter to the State's public policy. The doctrine of progressive discipline states that a public employee's past record "may be resorted to for guidance in determining the appropriate penalty for the current specific offense." West New York v. Bock, 38 N.J. 500, 523 (1962). Our Supreme Court has held that, "progressive discipline has been bypassed when an employee engages in severe misconduct . . . ." In re Herrmann, 192 N.J. 19, 33 (2007).

> Although progressive discipline is a recognized and accepted principle . . . that is not to say that incremental discipline is a principle that must be applied in every disciplinary setting. To the contrary, . . . progressive discipline is not a necessary consideration . . . when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> [Ibid.]

"[P]rogressive discipline is not a fixed and immutable rule to be followed without question because some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." In re Stallworth, 208 N.J. 182, 196 (2011) (citations and internal quotation marks omitted).

Here, the arbitrator explained that he did not choose to enforce progressive discipline due to the "irrevocable differences between the administration, staff members and [plaintiff]. In order to effectively serve the needs of students it is important the school [g]uidance [d]epartment function free of conflict." Thus, he found that it would be "inadvisable to reinstate" plaintiff. The judge agreed that progressive discipline was inappropriate, and cited Grossman, which states that one must "take into consideration any harm or injurious effect which the [employee]'s conduct may have had on the maintenance of discipline and the proper administration of the school system." 127 N.J. Super. at 30. As there was no obligation for the arbitrator to impose progressive discipline on plaintiff, his election not to do so does not violate public policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1778-17T3